## No. 11,995.

### JOHN B. FOLEY VS. LEON GODCHAUX.

It is the servitude of the lower estate to receive and dispose of the water that flows naturally from the estate above, and no obstruction to that flow can be created by the proprietor of the lower estate. Civil Code, Arts. 660, 661; 19 La. 351; 16 La. 151.

If such obstruction is created the proprietor of the lower estate will be liable for the damage. *Ibid.*

The abandonment of the legal servitude of drain imposed on the lower for the benefit of the upper estate, is not to be presumed, but requires clear proof; the court finds no such proof in this case.

APPEAL from the Twentieth Judicial District Court for the Parish of Assumption. *Caillouet, J. ad hoc.*

*Beattie & Beattie* for Plaintiff, Appellee.

*Pugh, Pugh & Marks* and *Lazarus, Moore & Luce* for Defendant, Appellant.

Argued and submitted January 25, 1896.
Opinion handed down February 10, 1896.

The opinion of the court was delivered by

MILLER, J.   The plaintiff alleging that defendant has erected a dam and otherwise obstructed a drain to carry the water from plain - tiff's land over defendant's plantation to the low lands in the rear, sues to remove the obstructions and for damages for loss of crops alleged to have been caused by the water accumulated on plaintiff's land owing to the obstructions.   The answer of defendant is in sub - stance, that the drain, the stoppage of which is the basis of plain - tiff's demand, was abandoned prior to the acquisition by the plain -

tiff and defendant of their respective plantations, and denies the obstructions imputed to defendant in the petition. The answer sets up that in 1852, an agreement was entered into by the author of defendant's title, and other planters in the neighborhood, by which the drainage of their lands was to be effected by means of a canal from above the plaintiff's land, crossing the drain and leading to what is known as the Company Canal. It is charged that this agreement was for the benefit of the lands then owned or that might afterward be added; that in accordance with the agreement the requisite canal to connect with that of the Company was cut at great expense, has been in use for fifty years, and it is charged superseded and made useless the drain, the stoppage of which is plaintiff's cause of action. The answer avers besides that the plaintiff's lands were acquired after the agreement by one of the contracting parties as part of his plantation, and thus became subject to the drainage system established by that agreement; that plaintiff, holding under one of these contracting parties, is bound by his contract; can not now insist on any drainage other than that created by that agreement, and can not partake of that without contributing to the expense, which it is alleged he has refused to do; and the answer, insisting that the drainage claimed by plaintiff would throw all the water from plaintiff's land into the canal cut to connect with the Company Canal to the detriment of those interested, prays that all such parties be made defendants, and that plaintiff be decreed to be estopped by the agreement set up in the answer; the drainage thereby introduced be maintained, that claimed by plaintiff be denied, and his injunction be dissolved.

The injunction obtained by plaintiff was dissolved and the dam complained of by him was thus maintained. The judgment of the lower court was in favor of plaintiff, reinstating and making perpetual his injunction. From that judgment defendant appeals, and answering the appeal the plaintiff asks for an amendment giving him the damages claimed by him and refused by the lower court.

The plaintiff's plantation fronts on the Bayou Lafourche. In the rear is that of defendant. The natural drainage of plaintiff's land it is claimed, was designed to be effected by a bayou passing through his plantation to that of defendant's, thence to the swamp in the rear. The testimony shows the bayou to be thirty feet wide where it enters defendant's land; in some places in his field to be partially

filled by the crossing of carts and wagons, but distinctly traceable, and with a depth varying from eighteen inches to four feet. The draining capacity of this bayou was affected by the filling at some points, but we think it proved it served as a drain for plaintiff's land. On this point defendant's witness testifies, in an excessive rain the water ran in the bayou from plaintiff's field through to defendant's lands. Whatever the condition of the bayou in defendant's field, and waiving the question whether it was not his duty to keep it clear as an outlet, it is the current of the testimony that the bayou was the means of carrying off the water from plaintiff's land. It was across this dam that in the spring of 1894, defendant put the dam of which the plaintiff complains. It was removed by plaintiff, replaced by defendant, maintained under the order dissolving plaintiff's injunction, and there is no kind of question the dam completely cut off plaintiff's drainage.

The contention of defendant is founded on the agreement of 1852, and insists plaintiff is confined to the drainage then established. The contracting parties were four planters owning plantations on the Bayou Lafourche, lower down than that now owned by plaintiff. That drainage suited them, the canal then cut carrying the water from their places to the Company Canal, back in the swamp, as the witnesss express it, in or near the rear of the plantations of the four contracting parties. It was stipulated in this agreement that the expense of the proposed drainage should be borne proportionately by the four parties, and their agreement should embrace any future addition or enlargement of their then existing plantations. The plaintiff acquired his property forty years after this agreement. He holds by subsequent conveyances under one of the contracting parties who, after the agreement, became the owner of the land afterward acquired by plaintiffs, and it is insisted that land was bound for its part of the drainage expense under the stipulations that enlargements should contribute. The owner of forty years ago being bound, it is claimed the plaintiff succeeding to the ownership is in like manner bound.

The ownership of the land now belonging to plaintiff, preceding his, was that of Landreaux, owning the Trinity plantation. The plaintiff's land is above the Trinity, and above all the other places whose owners entered into the agreement of 1852. Moreover, plaintiff's land does not adjoin Trinity. The drainage of 1852 was

important, if not indispensable, to the lands of the contracting parties. But plaintiff's lands lying above, the natural drainage to the rear, was not dependent on the canal cut to the Company Canal. It is for the land below to provide for the water that flows naturally from the superior estate. Civil Code, 660. Hence, the plaintiff contends the agreement of 1852 has no application to his land acquired by Landreaux after the agreement. It is urged in support of this, that the land was not within the enlargement stipulation, because not adjoining the Trinity plantation. The situation of plaintiff's land not requiring the drainage system of 1852, is also urged to exclude the application of the agreement of that year for the benefit of lower estates, and plaintiff finds support in the additional fact that neither Landreaux or any succeeding owner of these lands were ever called on for any contributions under the agreement of 1852. The relinquishment of a natural servitude is not to be presumed.

The defendant urges that all the water from plaintiff's land, whether or not flowing through the bayou the defendant obstructed, is bound to find its way to the Company Canal through the connecting canal cut in 1852. If this is so, it is solely because of this connecting canal on defendant's land, which we infer from the record crosses the bayou in its course through the swamp. It seems to us it is no concern of plaintiff how the lower estate disposes of the water it receives from the superior estate. It may be, as defendant claims, that if the water from plaintiff's lands flows into the company dams, lessening the capacity of that canal, it will expose the lands of others to overflow. Here again it may be said, that is for the owners of all these lands lying below plaintiff to protect themselves by suitable drains. Neither defendant or any of these proprietors of the lower estate can, in our view, stop the natural flow of water from the superior estates on the ground that water will overflow their lands. It is their obligation to receive such water and their burden to provide means of disposing of it.

We can find in none of the contentions of defendant any justification for the dam erected by him. The text of the Code creating the servitude of the lower estate forbids the erection of such obstruction. C. C., Arts. 660–661. If, indeed, the agreement of 1852 could be construed to require a contribution from plaintiff for the use of the canal drainage, we are clear that did not authorize the stoppage of all his drainage, whether by the bayou to the swamp or to the canal or in any mode.

We are asked to remand this case to afford an opportunity for all parties interested in the canal drainage to be brought before the court.   We would remand if it would serve any useful purpose.   In our view the presence of these parties could in no manner affect the decision between plaintiff and the defendant.

If the defendant, as we hold, had no right to close the dam, and in consequence plaintiff lost his crop, in our view damages are due plaintiff.   The judgment of the lower court is against plaintiff on his demand for damages.   The judgment in that respect is placed on the ground that plaintiff took the law into his own hands by remov- ing the dam first erected.   The plaintiff testifies he supposed that the dam was on his land.   Whether right or not, in this respect, his supposition deserves consideration in our appreciation of the act. In view of the fact that defendant replaced the dam since main- tained, the first removal by plaintiff of that he deemed an unlawful obstruction, afterward - reinstated and maintained, can not afford protection to defendant now sought to be held for his unlawful act.

We have examined the plaintiff's proof as to his damages.   We think an allowance for one hundred tons of cane at eighty five cents, and one hundred dollars for the corn planted, will compen- sate plaintiff for his loss on crops.   As to the wood claimed to have been cut but not sold, by reason of the flooding of the land, we do not find the basis for any judgment.   We think, too, the attorney's fee of one hundred dollars should be allowed plaintiff.

We are asked to give punitive damages.   We have not felt at lib- erty to accede to this.   The reasonable belief of his right of defend- ant enclosing the dam, though his appreciation of his right was en- tirely wrong, should, we think, protect him from punitive damages.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended so as to allow the plaintiff damages, and it is therefore ordered, adjudged and decreed that plaintiff do have and recover from defendant three hundred and twenty - seven dollars and fifty cents, and as thus amended the judgment of the lower court be affirmed with costs.