CRIMINAL LAW (§ 1020*)—APPELLATE JURISDICTION—PENALTY.

This court is without jurisdiction of an appeal from a judgment by a mayor's court imposing a fine of $5, or imprisonment for 10 days, for violation of a town ordinance.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2578–2580; Dec. Dig. § 1020.*]

Appeal from Mayor's Court, Town of De Ridder; J. M. Nichols, Mayor.

Del Charlan and others were convicted of violating an ordinance of the Town of De Ridder, and appeal. Dismissed.

Heard & Perkins, of De Ridder, for appellants. Kay & Jackson, of De Ridder, for appellee.

MONROE, J. The transcript in this case discloses two affidavits, charging violations of a town ordinance prohibiting games of "hazardous chance," a statement of facts, the minutes of the court showing that the parties charged were fined $5 and sentenced to imprisonment for 10 days in default of payment, notice of appeal to the Supreme Court, fixing of appeal bond at $50, and the bond. The appellant has not appeared, and the appellee moves to dismiss the appeal, on several grounds. One is sufficient. This court is without jurisdiction to entertain it. Constitution, art. 85.

Appeal dismissed.

---

(61 South. 388.)

No. 18,992.

ROBERTSON v. LEBERMUTH.

(Feb. 3, 1913. Rehearing Denied March 17, 1913.)

*(Syllabus by the Court.)*

1. WATERS AND WATER COURSES (§ 179*) — RIGHT TO DRAINAGE—NATURE AND EXTENT.

A right to drainage is a real right, the relinquishment of which is not readily presumed.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 244–250, 256–259, 263, 264; Dec. Dig. § 179.*]

2. WATERS AND WATER COURSES (§ 171*)—OBSTRUCTION—RIGHT TO ABATEMENT — SERVITUDES.

Where one agrees to the digging of a canal and to the opening of a new drain, the purpose

of which is to better drainage, but which dam fails of its purpose, the owner of a servitude of drain in the natural drain has the right to demand the destruction of a dam built, in order that the formerly existing drain may again be re-established. It was not proven that the owner had ever consented to the embankment or dam built in the natural drain.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 216–222; Dec. Dig. § 171.*]

3. WATERS AND WATER COURSES (§ 176*)—OB-
STRUCTION—RIGHT TO ABATEMENT.

Where one appears before a notary public and by an act makes an ex parte declaration of the dedication of certain land for a drainage canal, this act cannot bind persons not a party to it, and these third persons do not become parties thereto by their mere silence and by their inaction in permitting the waters from their respective plantations to drain into the canal dug on the land so dedicated; and this inaction will not be held to be an abandonment of some other right of drain.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 237–243; Dec. Dig. § 176.*]

4. WATERS AND WATER COURSES (§ 179*)—OB-
STRUCTION—RIGHT TO ABATEMENT.

The board of drainage commissioners of a district are not necessary parties to a suit between two individuals, one of whom is seeking to compel the other to destroy a dam that interferes with her right of drain.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 244–250, 256–259, 263, 264; Dec. Dig. § 179.*]

5. WATERS AND WATER COURSES (§ 176*)—OB-
STRUCTION—DAMAGES.

While the silence of the plaintiff is not a sufficient ground on which to predicate the relinquishment of a right of drain, which is a real right, still it is sufficient to bar her right to recover for the loss of her crops from the overflow, alleged to have been caused by the construction of the dam. The cause of the loss of the crops is not made reasonably certain by the evidence.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 237–243; Dec. Dig. § 176.*]

*(Additional Syllabus by Editorial Staff.)*

6. WATERS AND WATER COURSES (§ 179*) —
RIGHT TO DRAINAGE—ACTIONS—PARTIES.

In an action between two individuals to have a right of drain recognized, where others who own land below the dam sought to be abated do not intervene, they are not necessary parties.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 244–250, 256–259, 263, 264; Dec. Dig. § 179.*]

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; Paul Leche, Judge.

Action by Mrs. Marian Robertson against Jacob Lebermuth. From a judgment for plaintiff, defendant appeals. Affirmed.

Pugh & Lemann, of Donaldsonville, for appellant. R. J. Chauvin, of Donaldsonville, and Marks, Wortham & Le Blanc, of Napoleonville, for appellee.

BREAUX, C. J. Plaintiff brought this suit to have a right of drain recognized through a bayou known by the name of Veret. This bayou begins at or near Point Houmas, in the parish of Ascension, about two miles above plaintiff's plantation. It flows from northwest to southwest and crosses her plantation at the upper line, and traverses it and the plantation of defendant, and continues in a southerly direction over a number of plantations. Plaintiff complains of a dam across the bayou, erected on the Lauderdale plantation, which stops the natural flow of the water in the natural bayou and injuriously obstructs the drain of her plantation.

It is not denied that the former owner of the last-named plantation (Lauderdale), in the latter part of the year 1902, threw up a dam in the bayou. It also appears that the dam was destroyed several times, but rebuilt.

Plaintiff also claims the sum of $3,474, alleged damage to her crop in 1909, caused by the dam in the natural drain, which forced back the waters and caused them to flow over a large portion of her plantation and destroyed her crop of cane and corn, valued at the amount just above mentioned. She also prayed for a mandatory injunction to issue to compel the owner of the servient estate to remove the dam, and prohibiting him from again putting any obstruction to the drain in the bayou.

The defense took issue with the plaintiff,

and urged that the dam was built and other works constructed in accordance with an agreement among a number of owners, including the plaintiff, whose plantations drain in the same direction, in fact, into the Veret until the dam in question was built. This above-mentioned agreement, it was said, was entered into about the year 1901, some time anterior to the purchase of the Lauderdale plantation by the defendant.

The purpose of the defendant and defendant's authors in title and of other owners of plantations below the dam was to divide the waters, separate them completely, a part to flow through a canal to be built on the upper line of Lauderdale plantation, and the other waters below the dam to be built to flow into Bayou Veret, and those above the dam to be drained into Canal Lapice, just above mentioned, thus, it is alleged, giving relief and exit to the waters of Faustina plantation, owned by plaintiff, by relieving Bayou Veret, which had almost lost its identity, defendant alleges, as a natural drain owing to the neglect of those interested in maintaining the drain, and also to the end of preventing, it is further alleged, the overflow of the bayou during heavy rains.

It is also stated that the owners of plantations along the bayou contributed a stated amount to build Lapice Canal. The owner of Lauderdale contributed the land upon which to build the canal, as well as $500. Plaintiff contributed $250, and others contributed in proportion to their respective interests.

On the 14th day of October, 1899, Burgundy Lapice, vendor to defendant, appeared before a notary and declared in a deed that he donated the land on which the canal was to be built. A plat is annexed to the deed. This deed is not signed by those who contributed the different amounts to defray the expenses of building the canal; it was signed only by Lapice. With these contributions

132 LA.—11

Lapice built the canal. He also constructed the dam in question some time after the drain through the new canal had been opened.

One of the contentions of the defendant is that those who contributed an amount to build this canal should be made parties to the suit. Defendant alleged that this dam was erected with the knowledge and consent of the plaintiff; that she was interested, and received the benefit of the drainage. This allegation, we may as well state now, is not sustained by sufficient proof. The defendant's further contention is that the commissioners of the drainage district should be made parties; that their system of drainage was adopted, and that they took part in the plan of drainage to open some of these drains; that, for that reason, they also should be made parties.

The main difference between plaintiff and defendant, rendered evident by the facts, is the dam in question. Defendant's proposition was that, as Bayou Veret was not sufficient to carry off the waters, it was necessary to build a canal.

There is a plausibility in defendant's contention. The purpose as stated to this point was to relieve the natural drain.

We recur to this branch of the case again, in order to state that there is a Napoleon Bayou which forms a part of the upper drain.

As above stated, the property below the dam was to flow in the Veret Bayou, and the property above in the new canal, and from the new canal into Bayou Napoleon to a low swamp at some distance, known by the name of Grand Trou. The work of digging the new canal was commenced in 1901. Afterward a dredge boat was constructed in the canal; unfortunately it was destroyed by fire. The distance between Veret at the place where the dam was built and Bayou Napoleon, to which it was the intention to main-

tain a sufficient drainage, is about 29 acres, and through Bayou Napoleon about 4 miles. In addition, in order to have a useful drainage, it was necessary to do some dredging in Bayou Napoleon. Since the destruction of the dredge boat, no work has been done, either in Lapice Canal or any other drain. There is no question but that, if the dam had about evenly divided the waters, and the drainage on each side had been kept up, it would have been satisfactory; this was not done, and the result was a failure. The plaintiff remained silent until the heavy fall of rain demonstrated that the drainage was not what it should be. In that year it became known that plaintiff had never been consulted about the natural drain, nor made aware of the intention to close the drain.

We will state here that that is frequently the course taken among neighbors for an improvement; the preliminaries are not sufficiently guarded by full explanation of details. It is all well until loss and destruction arise.

From the evidence before us it seems strange that the plaintiff was never consulted about the dam, in which she had the interest of an owner. There was no reason to let her remain in the dark about this drain, and particularly the dam; it would have been a very simple matter to mention to her why a change was proposed. If a full explanation had been made to her, she would have been concluded. If an exchange of the natural for the artificial was the purpose, it is unexplainable why nothing was said to plaintiff about it. When an important change is proposed, to leave out of consultation a lady proprietor of land is negligence. It was not advisable to begin by making the improvement and afterward let this improvement show its usefulness, and by its effect compel permanent acquiescence and acceptance on the part of all concerned.

[1, 2] The land is level, and drainage of the greatest usefulness. Two outlets are better than one. In agreeing to the second outlet, it does not follow (it is not to be presumed) that it was the intention of plaintiff to relinquish the natural drain. She had a real right in this servitude.

The apprehension on the part of the defendant is that, by opening the dam, the waters will overflow the lands below the dam and cause him and others owning lands situated south of the levee in the drain considerable loss. He avers that he bought the place with this dam in the Veret as it is now, and plaintiff has no right to an order compelling him to remove it.

There is inconsistency on the part of defendant in regard to this drain. At one time defendant's contention is that there is no drain; that the bayou is no longer a drain. At another time the contention is that, if reopened, it will flood defendant's plantation.

[3] It devolved upon the defendant to provide means to protect himself. The courts can afford him no relief, in view of the neglect of his ancestor in title in not obtaining the required consent. Nothing indicates that it was the intention to take the plaintiff into the counsels of those who determined to open the new canal. The most that was done in that direction was the notarial declaration, to which we have before referred. An ex parte act, which makes no mention of an intention to close Veret as a natural drain above a certain point, is not a notice. She may have seen the waters flow in the direction of Bayou Napoleon, although she denies it; she may have been willing to let them flow in that direction; that was not an abandonment of the other drain. She could not be deprived of an acquired right because of her silence; there was no active renunciation, for that required written consent; it was not a tacit renunciation according to the preponderance of the testimony.

The relinquishment of a natural drain is never presumed. Foley v. Godchaux, 48 La. Ann. 469, 19 South. 247.

None of those who drew the different maps in evidence before us thought of indicating where the dam was, or referred to a dam affecting the drain.

The decision in Swain v. Webre, 106 La. 161, 30 South. 331, is pertinent.

May v. Boulware, 35 La. Ann. 469, is also an analogous case.

There is another principle laid down in these decisions, to which we will give a passing notice. It is that the servient estate must receive the waters; that is, that its owner cannot stop the natural flow.

In the next place, defendant earnestly urged that it should not be expected of·him to remove the dam.

We do not conceive why he should not be the one to remove it. No other person has contended that it should remain as it is. He has attempted to meet the issues presented, and has lost. The dam is on his place. He has maintained it since he became the owner; he is the only party in interest.

[4] It is also contended by the defendant that the legal representative of the drainage district should be made a party. This district was only incidentally a party, if a party at all. Its engineer took the levels of the land years ago. He, as a witness, mentioned plans. They were not regular plans adopted by the district with a view of undertaking a drainage of the plateau in that section of the country. Moreover, even if this district had taken charge, it does not appear to us that it would have been possible for it to divest plaintiff of her vested right to a natural drain, if she in no way had lost the right by any act. We cannot conceive that there is any necessity of making this district a party, as contended for by the defendant. It has no interests; and if it were made a party to the suit it could recover no rights.

[6] The others who own land below the dam did not see proper to intervene. There is no good reason why they should have been made parties in this dispute between plaintiff and defendant.

[5] In the next place, we take up plaintiff's demand for damages. This we have considered, and have arrived at the conclusion that it cannot be allowed. She is fortunate that she has not lost her drain after these many years of silence. It must be said that there was, to say the least, indifference on her part, which may not amount to a relinquishment; but it bars her from recovering damages. Besides, it is not reasonably certain that the forcing back of the waters to that part of her plantation which was flooded, and where her crops were destroyed, was in the main due to the dam. There had been a great storm and heavy fall of rain that flooded the whole surrounding country. On that account, again, we do not think that the defendant should be held in damages. The loss occasioned by the violent storm and excessive rains should not be charged to the defendant.

We will conclude by stating that plaintiff's silence, under the circumstances, did not amount to a relinquishment or abandonment of a drain; but it is sufficient to justify us, as we think, in denying an amount for her loss of cane and corn in 1909, for which she only brought suit in 1911, thereby manifesting no fear of a rise of water again that would cause her loss.

For reasons assigned, the judgment is affirmed.