145 So. 776

**BARRILLEAUX et al. v. DELAUNE.**

No. 31336.

Jan. 3, 1933.

Harvey Peltier, of Thibodaux, for appellants.

Caillouet & Caillouet, of Thibodaux, for appellee.

O'NIELL, C. J.

The plaintiffs, being the owners of a farm on Bayou Lafourche, adjoining the farm of the defendant in the rear, sued for an injunction to compel him to remove a levee between the two farms and to allow the drainage water to flow from their farm upon his. The suit is founded upon article 660 of the Civil Code, which declares that there is a servitude due by the lower of two adjacent estates, to receive the drainage water that flows naturally from the upper to the lower estate, provided the industry of man has not been used to create the servitude; that the proprietor of the lower estate shall not put up a dam or other obstruction to prevent the natural flow of the water upon his estate; and that the proprietor of the upper estate shall not do anything to make the servitude more burdensome on the lower estate. The defendant, answering the suit, denied that his estate ever owed the servitude, and averred that, if there ever was such a servitude, it was abandoned by the plaintiffs' father, Ferdinand Barrilleaux, when he owned the land which they now own, and by them after they inherited the land. The defendant pleaded that he had bought the land adjoining that of the plaintiffs with knowledge that they and their ancestor had abandoned and renounced whatever right of drainage they might have had upon the land, and particularly as shown by the location of the levees, drainage canals, etc., at the time and long before the defendant bought the land; and hence he pleaded that the plaintiffs were estopped to claim the right to drain their land upon his.

The district court gave judgment for the defendant, rejecting the plaintiffs' demand. They have appealed from the decision.

The plaintiffs' farm is called Four-Bits plantation. It has a front measurement of about 5 arpents on the west or right bank of Bayou Lafourche, and a depth of about 20 arpents, and is bounded on the upper or north side by the village of Lockport, on the lower or south side by St. Sauveur's Catholic Church property, and in the rear or on the west by the defendant's plantation.

The village of Lockport measures about 700 feet in front on the west bank of Bayou Lafourche and about 3,500 feet (nearly 20 arpents) in depth, and has for its northern boundary the canal which was once called the Barataria Canal, afterwards called Barrow Canal, and which is now a link in the Intracoastal Canal of the United States government. The village is bounded on its lower or south side by the plaintiffs' plantation, and in the rear or on the west by the defendant's plantation.

The land of St. Sauveur's Catholic Church measures one arpent in front on the west bank of Bayou Lafourche, and about 20 arpents in depth, and is bounded above or on the north by the plaintiffs' plantation, below or on the south by the Felicia plantation, formerly belonging to the late Ellis Foret, afterwards belonging to his widow and heirs, and in the rear or on the west by the defendant's plantation.

The village of Lockport, and the plaintiffs' plantation, and the church property, and the Ellis Foret or Felicia plantation, are described as extending westward from Bayou Lafourche to the 40-arpent line. The so-called 40-arpent line, there, however, according to the government surveys, is only about 20

arpents west from Bayou Lafourche, on account of a bend in the bayou.

The defendant's plantation is called Idalawn plantation, and was originally the reclamation project of the Smithport Planting Company. It is approximately a mile square, fronts on the south side of the link in the Intracoastal Canal, called Barrow Canal, and adjoins, on their rear or west line, the village of Lockport, the plaintiffs' plantation, the land of St. Sauveur's Catholic Church, and the Felicia plantation of the widow and heirs of Ellis Foret. In other words, the so-called 40-arpent line, which is in fact less than 20 arpents west from Bayou Lafourche, and which is the rear or west boundary line of the village of Lockport, the plaintiffs' plantation, the St. Sauveur Catholic Church property, and the Forets' Felicia plantation, is the east boundary line of the defendant's Idalawn plantation.

The reclamation project of the Smithport Planting Company, which resulted in the conversion of an area of about 640 acres of low and soggy marsh land into what is now the defendant's Idalawn plantation, was commenced in 1908 and completed in 1911. It was afterwards improved by the digging of a 30-foot canal along the rear, from the Ellis Foret plantation, in 1917 or 1918.

The rear or western part of the plaintiffs' plantation, like the west end of the village of Lockport, and like the rear or west part of the church property and of the Foret property, is very low land, hardly cultivable, and was on a level with the marsh land west of it before that land was reclaimed and converted into the Smithport plantation, now Idalawn plantation. The front of the plaintiffs' plantation, like the front of the village of Lockport, and the front of the church property and of the Foret plantation, on the bank of Bayou Lafourche, is 6 or 7 feet higher than the rear or west part of these lands; hence, before the Smithport reclamation project was put into effect, the plaintiffs' plantation, like the village of Lockport and the church property and the Foret plantation, shed its drainage water westward, upon the marsh land, whence it found its way into a shallow depression called Lake Fields, which became a part of the Smithport Planting Company's reclamation project.

More than thirty years before the institution of this suit, the plaintiffs' father, Ferdinand Barrilleaux, then owning the Four-Bits plantation, put up a levee across the rear end of the plantation, extending north and south, and pumped the drainage water over the levee and upon the marsh land behind it. On Barrilleaux's side of the levee, and parallel with it, was a ditch, into which the drainage water accumulated and to some extent drained off northward and southward. The levee was supposed to be on the so-called 40-arpent line, or rear boundary line of Barrilleaux's plantation; but a subsequent survey showed that the so-called 40-arpent line, or rear line of the Barrilleaux plantation, was about 90 feet behind the levee.

The reclamation of what is now the defendant's Idalawn plantation consisted in cutting a canal along each of the four sides of the tract, and, with the dirt so excavated, putting up a levee on each of the four boundary lines, and establishing a pumping plant at the northwest corner of the tract, to pump the water over the levee and into the Barrow Canal, now the Intracoastal Canal. There

was already a levee along what was supposed to be the rear boundary line of the village of Lockport, and a ditch along the village side of the levee; which levee and ditch were, respectively, continuations of the levee and ditch which Ferdinand Barrilleaux had established along what was supposed to be the rear or west line of his plantation. The ditch emptied into the Barrow Canal, and was the main drainage ditch for the village of Lockport and for the Four-Bits plantation. By agreement with the officers of the village, and with the present plaintiffs, the proprietors of the Smithport reclamation project enlarged and utilized, as a part of the project, the levee extending along what was supposed to be the rear line of the plaintiffs' plantation and continuing along the rear end of the village of Lockport to the Barrow Canal. From that time until the year 1920, all of the drainage water from the plaintiffs' plantation went through the ditch, either northward, back of the village of Lockport and into the Barrow Canal, or southward, back of the church property and into a large canal in the rear of the Felicia plantation. The pumping of the drainage water from the plaintiffs' land over the levee in the rear was then discontinued, in or about the year 1908, and was never resumed.

It appears that, on account of an increase in the volume of water in the Barrow Canal, the drainage ditch in the rear of the village of Lockport became inadequate to carry off the drainage water from the village and from the plaintiffs' property and St. Sauveur Catholic Church property; and, in consequence, the seepage of water through the levee became annoying and expensive to the Smithport Planting Company. To avoid these ob-

jectionable conditions, all of the parties concerned, namely, the Smithport Planting Company, on the one side, and the officers of the village of Lockport and the Barrilleauxs and the church authorities, on the other side, entered into an agreement, in writing, on the 21st of February, 1920, by which the Smithport Planting Company agreed, for $2.50 per year for every acre of land to be drained, to take all of the drainage water that could not be drained into the Barrow Canal, from the village of Lockport, the Barrilleaux plantation and the church property. The land to be drained was 43 acres in area, comprised between the drainage ditch and a line running north and south, 1,020 feet east from and parallel with the ditch. Of the 43 acres to be drained, the village was to pay for 16 acres, the Barrilleauxs, plaintiffs in this suit, 22½ acres, and St. Sauveur's Catholic Church, 4½ acres. It was stipulated that the three parties whose lands were to be drained were to maintain a drainage canal of sufficient capacity, along the levee, from the lower line of the church property to the Barrow Canal, and to construct and maintain two flood gates, one at the Barrow Canal and the other in the levee, between the village of Lockport and Smithport plantation, at a location to be approved by the Smithport Planting Company. It was stipulated that the flood gate at Barrow Canal should remain open and the other flood gate closed as long as the water level in the drainage canal would be higher than the water level in Barrow Canal, and that the flood gate at Barrow Canal should be closed and the other flood gate opened whenever the water in the drainage canal would become level with the water in the Barrow Canal.

The purpose of providing for two flood gates, to be opened only one at the time, was to insure that the Smithport Planting Company should receive from the lands of the other parties to the contract only so much of the drainage water as could not flow into the Barrow Canal. The ditch or canal on the Smithport side of the levee was very deep and led to the company's pumping plant on the Barrow Canal. Hence, when the flood gate in the levee would be opened and the one at the Barrow Canal closed, the drainage of the village of Lockport and of the land of the plaintiff and of the church would be complete. It was stipulated that the payments by the village and the Barrilleauxs and the church were to be made quarterly, and that a failure of payment on the part of any one of them might cause a forfeiture of the contract, at the option of the Smithport Planting Company. The contract was made for one year, with the stipulation that it might be continued from year to year by mutual consent of the parties. The village authorities and the Barrilleauxs and the church authorities promptly had an 8-foot canal dug along the line of the levee, from the lower line of the church property to the Barrow Canal, and had the two flood gates constructed, one at the canal and the other in the levee between the village and Smithport plantation. The system of drainage provided for in the contract continued in force and effect from 1920 to the end of 1925; but payments for 1925 were not made, and, in 1926, the Smithport Planting Company permanently closed and sealed the flood gate in the company's levee. The municipal authorities of Lockport and the plaintiffs acquiesced in the closing of the flood gate, and constructed a

pumping plant of their own at the north end of their 8-foot canal, and proceeded to pump the drainage water from the rear end of the village and the rear end of the Barrilleaux property into the Intracoastal Canal.

Meanwhile, it was discovered that the levee which was supposed to be on the so-called 40-arpent line was in fact about 90 feet east from the line, so that the Smithport Planting Company was cultivating about 90 feet of the rear end of the corporation limits of Lockport, and about 90 feet of the rear end of the Barrilleaux property, and of the church property, and perhaps of the Foret property. The company endeavored to buy the 90 feet of land within its levee, and succeeded in buying from the village of Lockport, and made some satisfactory arrangement with the widow and heirs of Ellis Foret, but the Barrilleauxs and the pastor of the church refused to sell their 90 feet. In 1927, therefore, the company constructed a new levee 30 feet west from, and on the company's side of, the rear boundary line of the Barrilleaux land, and of the church property, about 120 feet west from the old levee, and connected the ends of the new section of levee with the old levee, by extending the new section eastward above the south end of the 90 feet of land bought from the village of Lockport and below the south end of the 90 feet of land belonging to the church. Thereafter, Albert L. Barrilleaux, in charge of the Barrilleaux plantation, cut a 10-foot gap in the levee which remained 90 feet east from the rear boundary of the plantation, and allowed the drainage water to flow into the space between that levee and the new section of levee constructed by the Smithport Planting Company. The only reason

given by Albert L. Barrilleaux, in his testimony, for cutting his levee, was that, after the Smithport Planting Company had constructed the new section of levee, 30 feet beyond the Barrilleauxs' property line, they had no further use for their levee. Mr. Barrilleaux admitted also, in his testimony, that he made no objection when the Smithport Planting Company built the new section of levee, 30 feet beyond the Barrilleaux property line.

The Barrilleauxs and the municipal officers of Lockport continued to operate the pumping plant at the north end of their 8-foot canal, pumping the drainage water into the Intracoastal Canal, at the joint expense of the Barrilleauxs and the municipality, until the end of the year 1929. The municipal authorities then came to the conclusion that the drainage system was not adequate, and, without consulting the Barrilleauxs, dammed the 8-foot canal, so as to drain only the rear end of the village of Lockport. Then, and not until then, did the plaintiffs complain. Three or four weeks after the village of Lockport dammed the 8-foot canal, so as to prevent the drainage of the plaintiffs' land into the Intracoastal Canal, they brought this suit to compel the defendant to open his levee at the rear of their plantation, to allow their drainage water to flow upon his plantation. He bought the plantation in May, 1927, at a sheriff's sale made in foreclosure of a mortgage against the Smithport Planting Company. He had been managing the plantation for the mortgage holder for several years, and was familiar with the conditions with regard to the drainage of the place and of the lands adjoining it on the east.

We doubt very much that the defendant's plantation ever owed a servitude of drainage to the plaintiffs' plantation. But, conceding for the sake of argument that there was such a servitude before the reclamation project was put into effect, the servitude was abandoned and relinquished when the plaintiffs consented, even tacitly, to the Smithport Planting Company's making the plaintiffs' levee a part of the company's reclamation scheme. And the abandonment and relinquishment of any such servitude was confirmed by the contract of date the 21st of February, 1920; under which contract the plaintiffs paid to the Smithport Planting Company a stipulated cash consideration, for five years, for the privilege of draining upon the Smithport plantation only such surplus of water as they could not drain into the Barrow Canal; and under which contract the plaintiffs consented to forfeit, and did in fact forfeit, even that privilege, for the plaintiffs' failure to pay the stipulated consideration.

We agree with counsel for the appellants that an abandonment or a relinquishment of a servitude of drainage is not to be presumed, and can be established only by positive and unmistakable proof. Foley v. Godchaux, 48 La. Ann. 466, 19 So. 247, is authority for that proposition, but for nothing else appropriate to this case. The proof of the abandonment or relinquishment of whatever right of drainage the plaintiffs or their ancestor in title may have had upon the defendant's land, in this case, is positive. There is nothing in the Civil Code, on the subject, or elsewhere in the law of this state, that forbids a landowner, especially for a valid consideration, to abandon or relinquish a servitude of drainage.

The judgment is affirmed.