This is a suit for injunction, both mandatory and prohibitory, in which the plaintiff seeks to have the defendant ordered to remove a dam or obstruction which he alleges has been constructed by the defendant on his own property at a point where a large culvert situated underneath an irrigation canal takes the drainage water from his property.
Plaintiff alleges that his property and that of the defendant are contiguous; that his property lies directly north of that of the defendant; that it is higher than the defendant's and that the natural flow of water, or the drainage from his property, is to the south and therefore the defendant's property owes his property the servitude of drain. He then sets out that defendant has placed a dam or obstruction on his property at the point where it interferes with and impedes the natural drainage and seeks by injunction to have the dam removed and the defendant enjoined from further obstructing his drainage.
In the alternative he alleges that in the event it should be found that the natural drainage of his property is not from north to south and consequently over that of the defendant, then that he has acquired a right of servitude through a shallow ditch over and across the defendant's property which has been in existence for over ten years and he pleads the acquisition of that servitude by prescription.
Coupled with his demand for injunction, and in the alternative for a recognition of the servitude claimed by prescription, plaintiff presents a demand for damages to his crops which he avers has been caused by the illegal acts of the defendant in placing the said dam or obstruction which, having interfered with his drainage, caused the water to remain on his property and resulted in the loss of his work in seedplanting on a number of acres adjoining the defendant's property, The demand is for the total sum of $280.84.
The defendant for answer denies that the natural drainage of plaintiff's property is over his and contends that the ditch on his property through which his water is conveyed to the large culvert underneath the irrigation canal is an artificial drainage. He denies that he constructed a dam on his property as alleged by the plaintiff, and which impedes the drainage of plaintiff's property and denies also that plaintiff has suffered any such damage as he complains of as any damage which may have occurred had occurred prior to the time his alleged cause of action arose.
The trial judge after hearing the case awarded judgment in favor of the defendant holding that the drainage which plaintiff contends is a natural drainage is artificial and further, that the water which remains on the property of plaintiff at the point complained of does so because of a low spot which is "saucer shaped" as he expresses it, and from which, naturally the water cannot drain. He rejected the plaintiff's demand and this appeal was taken.
The evidence shows that the properties lie next to each other and are separated by an irrigation canal which supplies water for irrigating rice fields in that neighborhood. On the plaintiff's property, in the southwest corner, which is the portion we *Page 448 
are concerned with in this suit, there is a shallow field drainage ditch running in a southwesterly direction towards the irrigation canal. When this ditch reaches the canal the water which flows in it is conveyed through a large 12 inch iron pipe placed underneath the canal. This as we understand, is the usual method by which properties are drained underneath such canals.
We entertain but little doubt that the natural drainage of the plaintiff's property, particularly this part of it, is from north to south and consequently towards the irrigation canal and on to the defendant's property on the south. If that is so defendant's property owes the plaintiff a servitude of drainage under Article 660 of the R. C. C. which reads as follows: "It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude." The Article then goes on to provide that "the proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water" and "the proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome." If we are correct in saying that there is a natural drainage from the plaintiff's to the defendant's property then the provisions of that Article of the Code are those which have to be applied.
It is established by the testimony of at least seven or eight witnesses, one a civil engineer, and the others farmers of the neighborhood who are familiar with the property, that the natural drainage is from north to south and consequently from plaintiff's property on to the defendant's. Jasper L. Bourgeois, civil engineer, took the levels on the plaintiff's property in November of last year and made a contour map, which has been filed in the record. According to his testimony and his map it is plainly shown that the elevations on the plaintiff's property are to the north and that the slope is towards the south and therefore towards defendant's property.
Plaintiff introduced six other witnesses, all laymen, some of whom had cultivated his property and some that of the defendant and their testimony, is all to the effect that the natural drainage flow on the plaintiff's property is to the south. As a matter of fact the defendant's own testimony could be construed to the same effect, for although he had denied in his answer that he had constructed the dam on his property, he admits on the witness stand that he did and states further in justifying his action that if he tore the dam down or removed it, the water from plaintiff's land would flow over his land. Defendant introduced the testimony of a civil engineer by the name of Gus Quinn who evidently did not prepare himself to testify in the same manner that the other civil engineer had and who said that it would be difficult for him to say what direction the water flowed on plaintiff's property. Obviously his testimony, which is of a negative character, is not sufficient to overcome all the other testimony on this point in the case.
It is also contended by the defendant that the drainage is not naturally to the south on the plaintiff's property and that it is only made so because of the ditch which extends for a considerable distance in the southwest portion of the property through which water flows to the pipe under the irrigation canal. This ditch is constantly referred to as a "man made" ditch and we take that to mean that it is an artificial ditch made by plaintiff or some one before him and that even though the drainage would be natural in that direction, this ditch has rendered the servitude which the defendant's property owes to the plaintiff more burdensome, a thing which the plaintiff could not do under the provisions of the Article of the Code with which we are concerned.
From the testimony in the case we conclude that this is not such a ditch as is contemplated under the Article of the Code to make the servitude more burdensome. Mr. Bourgeois, the civil engineer, locates that ditch on his contour map and he marks it as a "shallow field drainage ditch." According to the testimony of a former owner of plaintiff's property, it appears that this ditch was dug by him more than 20 years ago not only across the plaintiff's property but extending for a certain distance over the property presently owned by the defendant. From the testimony of other witnesses *Page 449 
it appears that this ditch follows the natural drainage of the property and it seems that whether it does or not, the same quantity of water would flow over the plaintiff's property on to that of the defendant.
On this particular point we find the case of Broussard v. Cormier, 154 La. 877, 98 So. 403, 405, to have some bearing for the court, in discussing this particular provision of Art. 660, R.C.C., Stated: "And the proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome. But with this modification: That the owner of the superior or creditor estate may make all drainage works which are necessary to the proper cultivation and to the agricultural development of his estate. To that end he may cut ditches and canals by which the waters running on his estate may be concentrated and their flow increased beyond the slow process by which they would ultimately reach the same destination." According to the further statement contained in the opinion it would seem that the proprietor of the upper estate is only prohibited from cutting such ditches or canals to improve his land as will divert the water from its natural flow and thus concentrate it on the lower lands at a point which would not be its natural destination. Under that authority it would seem that even though the shallow ditch on the plaintiff's property is a "man made" ditch and perhaps concentrates the flow of water a bit more at the point where it reaches the irrigation canal culvert, yet it is nothing more that a ditch placed there to improve the cultivation of his land which he had a right to do and is thus relieved from the prohibition of the Article of the Civil Code to the effect that he could not make the servitude more burdensome. That ditch certainly, in our opinion, does not divert the natural flow of the water as it runs in the same direction as the natural flow is itself.
[1] Having concluded that the natural drainage of plaintiff's property is to the south and on to the defendant's and that this ditch has not served to make the drainage more burdensome on the defendant's land that disposes of the demand for injunction because under the terms of Art. 660 of the Code the defendant was not at liberty to construct the dam which he now admits he constructed and which no doubt prevents the running of the water from the plaintiff's property. There is something significant appearing in the evidence about an attempt having been made before this suit was filed to arrive at some amicable arrangement between the parties. The testimony to that effect is very vague but it did show that either before or after the suit was filed defendant cut two openings in the dam and this at least implies an admission on his part that he had no right to impede plaintiff's drainage by placing the dam there. The testimony with regard to these openings shows however that they are not sufficient to take care of the drainage and if the dam was illegally placed there it should be removed as plaintiff is insisting it be.
But even though we were to assume, for the sake of argument, that the digging of the ditch which extends from plaintiff's property to and over a portion of the defendant's, had the effect of changing the natural drainage in some manner, still the defendant's contention could not be maintained under the proof adduced in this case.
The testimony, as already indicated, is to the effect that some 20 years ago this ditch was dug by the man who then owned and farmed the upper property. According to his testimony there seemed to have been an agreement entered into between him and the defendant under which the proprietor of plaintiff's property was to maintain the ditch on both properties. The ditch on the defendant's property has been neglected for years and has grown up in weeds and grass and the water no longer flows freely through it. The contention of the defendant now is that it was the duty of the plaintiff to carry out the agreement and maintain that ditch in proper condition to take care of the water from his property.
[2, 3] As far as the record shows if there was ever such an agreement between former owners of the properties it was purely verbal and one under which the present owner of the property on the north cannot be held to that duty. According to *Page 450 
Art. 752 of the R. C. C. legal servitudes may be altered by agreement between the parties but certainly a servitude affecting real estate such as we are concerned with in this case cannot be altered in such a way as to hold subsequent owners of either property unless the agreement is in writing and is put of record or, unless the subsequent proprietors can be charged with knowledge of the agreement in some form or manner. The record in this case does not show any knowledge on the part of the plaintiff and we do not see how he can be held to an obligation with regard to the property made by an owner some 20 years ago. There is an interesting discussion of this point in the case of Foley v. Godchaux, 48 La. Ann. 466, 19 So. 247, in which the Supreme Court held that the abandonment or change of a legal servitude of drainage imposed on the lower estate for the benefit of the dominant estate "is not to be presumed, but requires clear proof." It was held that what proof there was in that case was not sufficient and still as we read the opinion, there seems to have been more than we have in this case. Besides it seems that in that case the court was dealing with a written agreement between several parties whereas here, as we have said, reference is made to the agreement as being merely a verbal one. In the case of Vidrine v. Guillory, 3 La. App. 462, decided by this court, it was held that the law contemplates such an agreement to be in writing, which undoubtedly is correct if subsequent owners of the properties are sought to be held thereby.
[4] Plaintiff claims damages in the sum of $280.24. He averred in his petition, and testified, that he lost the lespedesa and Dallas grass seed which he had planted on eight acres of his land as well as what he had to pay in preparing the land for planting, by reason of the defendant's action in having stopped his drainage. The amounts he paid for seed and fertilizer and for plowing the land involved 20 acres altogether but he claims the loss of only eight. He produced checks showing the entire payments which he made and which, limited to the eight acres that were entirely lost, amounts to the sum of $153.04. There is no proof to contradict his testimony on this point and he is therefore entitled to recover damages to that extent. The remainder of his claim is based on an estimate, alleged in his petition of what it would cost him to remove water grass from 15 acres and to prepare them for planting. He produced no proof of this item however and it cannot be considered.
For the reasons stated herein it follows that the judgment appealed from will have to be reversed and accordingly, the same is hereby reversed and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff Charles S. Cornett and against the defendant Annias W. Hebert, ordering the said defendant to remove the dam or obstruction placed by him on his property and which interferes with and impedes the drainage of water from the plaintiff's property adjoining his on the north, and restraining and prohibiting said defendant from further placing any dam or construction on his property which will interfere with or impede the drainage of plaintiff's said property in the future.
It is further ordered that plaintiff have judgment against the defendant in the sum of $153.04 with legal interest from date of judicial demand as damages, together with all costs of these proceedings.