**J. C. O'NEILL, Jr., James M. Folmar and Emory M. Folmar**

v.

**Louis G. MIRAMON and Slidell Development Corp.**

Civ. A. No. 78–689.

United States District Court, E. D. Louisiana.

Sept. 11, 1979.

Bruce A. North, New Orleans, La., for plaintiffs.

William J. Wegmann, New Orleans, La., for defendants.

SEAR, District Judge.

On March 2, 1978, J. C. O'Neill, Jr., James M. Folmar and Emory M. Folmar brought suit under the court's diversity jurisdiction against Louis G. Miramon and Slidell Development Corp. for damages they claim to have sustained in early 1976 because of the defendants' alleged breach of an oral contract to allow drainage from plaintiffs' property into their lake. Both defendants brought motions for summary judgment, which were granted on August 17, 1979. I now enter my reasons for granting those motions.

In November, 1975 the plaintiffs acquired an option to purchase certain property located along Gause Road in St. Tammany Parish, Louisiana, and they developed plans for building a shopping center and parking lot on the optioned site. The natural drainage from this property allegedly ran across property known as Lakewood Subdivision

and into a lake owned by the defendants.[1] At the time plaintiffs obtained the option, runoff from the property was carried into the lake by a series of ten-foot servitudes through the subdivision. However, engineering studies indicated that the shopping center would alter the drainage flow so as to make the existing lines through the subdivision inadequate.

A series of meetings was held between the plaintiffs and Miramon in late 1975 and early 1976 in an attempt to resolve the drainage problem. Miramon opposed any enlargement of the existing drainage lines and proposed that the plaintiffs acquire servitudes on lots adjacent to Lakewood Subdivision for a new drainage line. The water that flowed through the new line was still to be discharged into the defendants' lake, albeit at a different spot than before. With the assistance of Miramon, plaintiffs then acquired the servitudes needed for the new drainage line. Plaintiffs contend that at this time Miramon orally agreed to allow drainage via this line into the lake.

In late February, 1976, shortly before the options were to expire, Miramon began to express concern about the effect the drainage from the shopping center would have on the water quality of the lake, and in response to his concern, plaintiffs agreed to monitor the lake's water quality. However, despite this agreement Miramon subsequently refused to permit drainage via the new servitude into the lake. On April 15, 1976 plaintiffs exercised their option and acquired the property for the shopping center. As a result of the defendants' conduct, they were forced to build another drainage line and to delay the opening of the shopping center until the line was completed. Approximately two years after the defendants' alleged refusal to honor their oral contract to permit drainage, plaintiffs filed this action for the damages they claim are due to them as a result.

Plaintiffs contend, *inter alia*, that a natural servitude of drain is owed to their property by the lake. In other words, they contend that the lake is so situated that water flows naturally into it from their property C.C. Art. 660.[2] The defendants deny that there is a natural servitude of drain, but for purposes of these motions for summary judgment only, they are willing to concede that one exists. They contend, *inter alia*, that even if a natural servitude of drain does exist, the agreements involved in this matter concern solely the modification of that servitude. Such a modified servitude can be established in cases such as this only by title, which defendants contend requires a written contract under C.C. Arts. 743 and 2440.[3] Since the agreements sued upon are strictly verbal, defendants conclude that they are therefore unenforceable under Louisiana law. Plaintiffs do not dispute that a contract creating or modifying a servitude normally must be in writing. However, they cite three reasons why the rule does not apply here. None of the three is persuasive.

1. Defendant Miramon argues strenuously that he has never owned any interest in the lake. Resolution of that issue is not necessary to the disposition of the motions, and it is not addressed here.

2. C.C. Art. 660 provides:
   "It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
   The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
   The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."

3. C.C. Art. 743 provides:
   "Servitudes are established by all acts by which property can be transferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery."
   C.C. Art. 2440 provides:
   "All sales of immovable property shall be made by authentic act or under private signature.
   Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted."

First, plaintiffs contend that the oral contract involved in this case concerned a "right of discharge" as opposed to a servitude of drainage. They describe the distinction as one between the right to drain water across immovable property and the right to deposit water into an existing body of water. Even assuming that Louisiana law recognizes a right of discharge, the property right at issue in this case still must be classified as a servitude. C.C. Art. 647 defines a predial servitude as "a charge laid on an estate for the use and utility of another estate belonging to another owner." A servitude imposes no obligation upon the owner of the servient estate to do anything but only to abstain from acting or to permit a certain thing to be done on the estate. C.C. Art. 655.[4] In this case the oral agreement provided that the lake accept drainage from the shopping center property via a system of pipes which would carry the water around Lakewood Subdivision. This is a perfect example of the sort of "charge" described in Articles 647 and 655.

Plaintiffs cite *Martin v. Louisiana Public Utilities Co.*, 127 So. 470 (La.App., 1 Cir. 1930), as support for their contention that the contract here is concerned with a right of discharge. In *Martin* plaintiff acquired the right to discharge sewage into a sewer line owned by the defendant. The court rejected plaintiff's contention that he had acquired a servitude of drain and found instead that he had leased the right to use the sewer. This case is inapposite to the one before me now. The right to use a sewer, which is built underground for the sole purpose of receiving and transporting sewage, is simply not comparable to the right to drain water into a lake.

Second, plaintiffs argue that even if the contract sued upon did concern the modification of a natural servitude of drain, it did not have to be in writing to be effective. A natural servitude of drain arises from the natural situations of two estates, and plaintiffs correctly note that it is therefore subject to some different rules than is a conventional servitude. For instance, when a person possesses only a natural servitude of drain, he cannot enter the servient estate to clear a drainage ditch, although this action is permissible under C.C. Arts. 772 and 774 when the servitude is conventional.[5] *Thibodeaux v. Landry*, 351 So.2d 522 (La.App., 3rd Cir. 1977). In addition, natural and conventional servitudes are governed by separate prescription articles. C.C. Art. 795 (no prescription for non-usage of a natural servitude), C.C. Art. 789 (conventional servitude extinguished by ten years non-usage).[6] This case, since it involves alteration of a natural servitude, is governed by C.C. Art. 752, which provides:

> "Legal servitudes and even those which result from the situation of places, may be altered by the agreement of parties, provided the public interest does not suffer thereby."

Plaintiffs assert that the failure of this article to mention writing implies that a

---

4. C.C. Art. 655 provides:
   "One of the characteristics of a servitude is, that it does not oblige the owner of the estate subject to it to do anything, but to abstain from doing a particular thing, or to permit a certain thing to be done on his estate."

5. C.C. Art. 772 provides:
   "He to whom a servitude is due, has a right to make all the works necessary to use and preserve the same."
   C.C. Art. 774 provides:
   "The owner of the estate, to which the servitude is due, has the right to go on the estate which owes the servitude with his workmen, in the place where it is necessary to construct or repair the works necessary for the exercise of the servitude, to deposit there the materials necessary for those works and the rubbish made thereby, under the obligation of causing the least possible damage and of removing them as soon as possible.
   "Nevertheless, if in the act establishing the servitude, it is said that the owner to whom it has been granted can not construct works in order to exercise it, or can only construct them in a certain manner, this agreement must be observed."

6. C.C. Art. 789 provides:
   "A right to servitude is extinguished by the non-usage of the same during ten years."
   C.C. Art. 795 provides:
   "Prescription for non-usage does not take place against natural or necessary servitudes, which originate from the situation of places."

contract to alter a natural servitude can be oral, particularly in light of the fact that other codal articles regarding the establishment of servitudes specifically refer to writings. See, e. g., C.C. Arts. 743 and 2440.

I disagree. The examples given above in which the rules governing conventional and natural servitudes of drain differ depend on the special characteristics of a natural servitude. One with a natural servitude cannot enter the servient estate to clear a drain because a natural servitude exists independently of any act of man. Natural servitudes do not prescribe because they inhere in the natural situation of things and are not derived from laws or agreements among men. Unlike the plaintiffs, I do not find that the omission of a specific requirement in Article 752 that an agreement to alter a natural servitude be in writing is particularly significant. There is no rational reason why a contract to alter a natural servitude could be oral but a contract to create a conventional servitude must be written. The plaintiffs' analysis is not grounded in reason but rather upon a formalistic application of the "exclusio unius" principle.

Plaintiffs counter that *Cornett v. Hebert*, 31 So.2d 446 (La.App., 1st Cir. 1947), compels me to reach the opposite conclusion. In *Cornett* the court held that a third-party purchaser could not be bound by an oral agreement made by the former owner concerning a modification of a legal servitude.[7] The court commented:

"According to Art. 752 of the R.C.C. legal servitudes may be altered by agreement between the parties but certainly a servitude affecting real estate such as we are concerned with in this case cannot be altered in such a way as to hold subsequent owners of either property unless the agreement is in writing and is put of record or, unless the subsequent proprietors can be charged with knowledge of the agreement in some form or manner." *Id.* at 449–50. Plaintiffs read this ambiguous language as implying that an oral contract could bind the parties to the original agreement, although not subsequent purchasers. I read it somewhat more restrictively, for it appears to me that the court never reached that question. It was concerned solely with whether a third-party purchaser could be bound by an oral agreement to modify a legal servitude. Since it found that the purchaser had not learned of the agreement, it had no reason to decide whether an oral agreement would otherwise have been valid.

■ Finally, plaintiffs argue that C.C. Art. 2275 applies here.[8] That article allows a verbal sale to be good against a vendor who confesses to the sale on oath, provided actual delivery of the property has been made. A servitude is considered delivered if the owner of the dominant estate has made use of it. C.C. Art. 743. There is no evidence at all showing that the plaintiffs ever made use of the modified servitude of drain they were attempting to acquire from the defendants. In fact, the complaint centers on the fact that they were not allowed to drain from their property into the lake and were damaged as a result.

In sum, defendants' argument is well-taken. The oral agreement involved in this suit was an attempt under Article 752 to modify a natural servitude of drain (assuming that servitude existed). Such an oral agreement can be effective between the parties only if the requirements of Article 2275 have been satisfied. Since there has been no "delivery" within the meaning of that article, it does not apply, and the contract is unenforceable.

---

7. C.C. Art. 664 defines a legal servitude as one established by law "for the public or common utility, or the utility of individuals." Legal servitudes, like natural servitudes, may be altered as provided by Article 752.

8. C.C. Art. 2275 provides:

"Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment brought by defendant Louis G. Miramon and the Motion for Summary Judgment brought by defendant Slidell Development Corp. are both GRANTED. Let judgment be so entered.