363 So.2d 1209 (1978)
Robert Lemoine LANGEVIN et ux., Plaintiffs-Appellees,
v.
James Kenneth HOWARD, Defendant-Appellant.
No. 13622.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1978.
Rehearing Denied, November 14, 1978.
Writ Refused January 12, 1979.
*1210 Cryer & Harp, Shreveport, for defendant-appellant.
Richie & Richie, Shreveport, for plaintiffs-appellees.
Before BOLIN, HALL and JONES, JJ.
Rehearing En Banc. Denied, November 14, 1978.
JONES, Judge.
The defendant appeals from a judgment recognizing a legal predial servitude 50 feet in width and 1,537 feet in length across his land in favor of a 1.1 acre tract owned by plaintiff. The judgment enjoins the defendant from interfering with the use of the servitude by the plaintiff and rejects defendant's damage claims based upon the alleged improper issuance of the temporary restraining order.
The plaintiff answers the appeal. We reverse the judgment recognizing the servitude and granting the injunction and as amended affirm.
The property involved in this litigation was included in a 1955 partition of the Kent tract as shown on the following plat which was attached to the partition:
*1211 
The lot now owned by the plaintiff is sketched in the northwest corner of Tract F as shown on the plat of the partition and the lots owned by the defendant and Turk are identified by inscribing their names on the plat.
In the Kent partition of Tracts A, B, C, D, E and F as shown on the plat, the parties reserved ownership in indivision of a 50 foot wide strip running north and south through the approximate center of the partitioned tracts as a right of way to the Primitive Baptist Church public road located along the south line of the partitioned property. The partition contained with reference to this strip the following stipulation:
"Appearers herein have not partitioned a strip of land, hereinafter described, and continue to hold in indivision for the use and benefit of all appearers as an access road for the purpose of ingress and egress to the tracts herein described. It is understood that this reservation is not to be construed as establishing an easement or *1212 right of way in favor of the public generally, but is private in nature and ownership. Said strip of land is described as follows ........"
The parties to the partition failed to pay the taxes on the 50 foot strip and were divested of ownership of this strip at a tax sale in 1960. In 1969 Turk acquired the ownership of Tract F. In 1972 the defendant acquired ownership of Tracts B, E and the 50 foot strip. In 1973, following defendant's completion of his home on Tract E, he employed Turk to construct a 10 foot driveway down the approximate center of his 50 foot tract from its south line bordering the Primitive Baptist Church Road to his home located on Tract E. Defendant paid Turk the sum of $1,000 for this work.
In 1975 Turk decided to sell two lots in the northwest corner of Tract F adjacent to the east line of the 50 foot strip and pursuant to this plan, he had a survey made of each lot. Turk contemplated the use of the driveway which he had constructed on the 50 foot strip as the access route to the public road for the future owners of these two lots. One of these lots was .74 of an acre located in the northwest corner of Tract F, which Turk sold to plaintiff on August 6, 1975. The other lot was adjacent to and immediately to the south of it. Turk had arranged to sell the second lot on the same day that he sold the plaintiff his lot, however, the proposed vendee died prior to the sale.
On August 14, 1975 Turk discussed for the first time with defendant his plan to sell two lots in the northwest corner of Tract F and use the driveway constructed on the 50 foot strip as access for the purchasers of these lots to the Primitive Baptist Church Road. Turk advised defendant of his ownership claim to a portion of the right of passage over the 50 foot strip as a result of the Kent partition. Turk at this time gave defendant back $200 of the $1,000 that he had received from defendant for construction of the driveway. The $200 was given to defendant in the form of Turk's check which contained a notation on the face of it "use of driveway". Defendant accepted the check and cashed it. While Turk and defendant recognized that the check was a reimbursement to defendant of a portion of his $1,000 paid for the construction of the driveway, their understanding of the rights that were acquired for these two lots by this payment is in dispute. At the time of these negotiations defendant was unaware that one of the lots had already been sold to plaintiff.
Plaintiff moved a house trailer on his lot in October of 1975 and commenced the use of defendant's driveway. In May of 1977 defendant advised plaintiff to make arrangements for other access to his lot because defendant owned the 50 foot strip unencumbered by any right of passage. In the first week of July defendant proceeded to obstruct plaintiff's passage from his lot to the driveway located on the 50 foot strip. Defendant installed posts along the east line of the 50 foot strip, two of which were at a point on plaintiff's west line where his individual driveway entered the 50 foot strip. This interfered with easy access from the plaintiff's lot to the driveway located on the 50 foot strip.
Plaintiff instituted this action on July 8 wherein he sought judicial declaration of the existence of a right of passage on the 50 foot strip from the Primitive Baptist Church Road to his lot in the northwest corner of Tract F. In this suit plaintiff obtained a temporary restraining order prohibiting defendant from obstructing his use of this right of passage and sought an injunction permanently prohibiting such interference. Plaintiff's suit first contended his lot had a servitude of passage to the public road created by the 1955 Kent partition. Plaintiff alternatively argued that if there was no servitude in favor of his lot as a result of the Kent partition, then one was created on the defendant's driveway by the 1975 $200 check transaction between Turk and defendant. In the second alternative, he contended that if he had no right of passage for either of these reasons, that he *1213 was entitled to a right of passage over defendant's driveway under C.C. Art. 699[1].
The trial judge held that the Kent partition created a legal servitude under C.C. Art. 701[2] rather than conventional servitude and for this reason the failure of the right of passage to be used for a period of more than ten years following its creation did not cause it to be extinguished by the prescription provided for in C.C.Art. 789.[3]
The issues presented are: (1) was the Kent servitude in favor of Tract F a legal servitude within the contemplation of Article 701 and therefore exempt from liberative prescription by the provision of C.C. Art. 795[4] or was it a conventional servitude which prescribed following 10 years of nonusage? (2) did Turk's August 14, 1975 $200 CHECK payable to defendant and cashed by him create a servitude in favor of plaintiff's tract over defendant's 10 foot driveway? (3) if the check is an insufficient writing to create a servitude of passage did defendant's admissions under oath at trial with regard to his acceptance of the check create a servitude under the provisions of C.C. Art. 2275[5]? (4) if plaintiff's tract had no servitude of passage over defendant's tract by virtue of the Kent partition or the Turk-Howard check transaction, is it entitled to a servitude under the provisions of C.C. Art. 699? and (5) if plaintiff has no permanent right of passage across defendant's property, is defendant entitled to any damages as result of the court order prohibiting him from interfering with plaintiff's use of his alleged right of passage?

LEGAL V. CONVENTIONAL
The trial judge's determination that there was an article 701 servitude was erroneous because the language of 701 specifically requires that the dominant estate be enclosed in order to enjoy the servitude therein provided for. Picard v. Shaubhut, 324 So.2d *1214 517 (La.App.1st Cir. 1975), Morgan v. Culpepper, 324 So.2d 598 (La.App.2d Cir. 1975).
In order for the Kent partition to have created a legal servitude in favor of plaintiff's lot, Tract F must have been enclosed and deprived of any access to a public road as a result of the partition other than by use of the 50 foot servitude. This was not the case. The south line of Tract F as shown on the plat was the Primitive Baptist Church Road. Under these circumstances the servitude in favor of Tract F, created by the Kent partition, was a conventional servitude created by the agreement between the partitioners.
The evidence established there was no use made of the servitude which appertained to Tract F in the partition for more than 10 years following its creation in 1955. For this reason, the servitude was extinguished by the liberative prescription provided by C.C. Art. 789. Arcuri v. Cali, 244 So.2d 309 (La.App.4th Cir. 1971).

$200 CHECK TRANSACTION
Servitudes are established by all acts by which property can be transferred. C.C. Art. 743[6]. Creation of a servitude is an alienation of a part of the property. C.C. Art. 731[7]. Conventional predial servitudes and personal servitudes affecting immovable property which are created by agreement between the parties must be in writing. C.C. Art. 2440. Stinson v. Lapara, 62 So.2d 291 (La.App.Orl.1953); Newman v. Gumina, 77 So.2d 899 (La.App.Orl.1955); and McGuffy v. Weil, 240 La. 758,125 So.2d 154 (1960).
Plaintiff contends the $200 check with the notation on the face of it, "use of driveway" given by Turk payable to defendant and by him endorsed and cashed, constitutes the required written grant of the servitude. The writing on the check does not describe the 50 foot strip belonging to the defendant.
Plaintiff contends that parol evidence is admissible to supply the description of the servient estate. The rule that parol evidence is admissible to make clear a vague description requires the writing to sufficiently identify the property so that the property involved in the transaction can be determined by the writing rather than from the parol evidence. Kernan v. Baham, 45 La.Ann. 799, 13 So. 155 (1893); Lemoine v. Lacour, 213 La. 109, 34 So.2d 392 (1948) and Jackson v. Harris, 18 La.App. 484, 136 So. 166 (2d Cir. 1931).
On the check the only word referring to the servient estate is "driveway" and this falls far short of giving any written information upon which a determination of the servient estate could be made. For this reason no parol evidence was admissible for the purpose of providing the description of the servitude.
Plaintiff argues that the check given by Turk to defendant creates a personal servitude[8] by the operation of the *1215 doctrine of stipulation pour auturi in favor of the plaintiff over the defendant's driveway. The creation of a personal servitude over real property creates an interest in the property and for this reason must be in writing. Newman v. Gumina, supra. Because the check contains no writing describing the property subject to the personal servitude nor referring to it with sufficient certainty to justify the admission of explanatory parol evidence, it cannot form the basis for a personal servitude in favor of plaintiff.

VERBAL SERVITUDE
The rule that transfers of interest in immovable property must be in writing is subject to the exception that a verbal transaction is binding upon the grantor who confesses it when interrogated under oath. C.C. Arts. 2440[9] and 2275.
Plaintiff contends the defendant admitted during the trial he accepted the check in payment for a permanent servitude over the 50 foot strip in favor of the lot which Turk had conveyed to the plaintiff. A fair evaluation of the totality of the defendant's testimony establishes he admitted under oath only that he agreed for the plaintiff to use the driveway for a period of two years in consideration of the receipt of Turk's check. The defendant testified that any longer right of passage upon his 50 foot strip could be obtained only by negotiation in the presence of his wife and such right would have to be put in a written document prepared by an attorney.
The testimony of Turk and his wife about the circumstances surrounding the delivery of the check to the defendant is not admissible under C.C. Art. 2275 for the purpose of establishing the admissions of the defendant about his verbal transfer of the servitude. Only the admissions of the grantor are effective against him. Testimony from witnesses to the verbal transaction attempting to establish the verbal immovable property transaction is inadmissible. Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Boyette v. Wingfield, 317 So.2d 235 (La.App.2d Cir. 1975). The two year personal servitude created by the defendant by his admissions under oath commenced on August 14, 1975, and had expired in November 1977 when this case was tried below and therefore it cannot justify an adjudication of a servitude over defendant's driveway, nor the continuation of the injunction against the defendant contained in the trial court judgment.

IS PLAINTIFF ENTITLED TO A LEGAL SERVITUDE UNDER C.C. ART. 699?
The plaintiff alternatively contends that in the event he has no servitude over the 50 foot strip his lot is therefore enclosed, and for this reason he is entitled to claim a servitude over the land of the defendant pursuant to the provisions of C.C. Art. 699. This article is inapplicable for the reason the plaintiff's lot was a part of Tract F which was bordered by a public road on the entire south side. Plaintiff's lot was enclosed by virtue of it's severance from Tract F and under these circumstances C.C. Art. 701 requires plaintiff's vendor, Turk, provide him with a gratuituous servitude of passage over Tract F to the public road. Because plaintiff is entitled to the 701 servitude, he is not entitled to 699 servitude. Bourg v. Audubon Park Commission for City of New Orleans, 89 So.2d 676 (La.App. Orl.1955); Marceaux v. Broussard, 338 So.2d 308 (La.App.3d Cir. 1976).

IS DEFENDANT ENTITLED TO DAMAGES?
The defendant assigns as error the trial judge's failure to award him damages for the wrongful issuance of the temporary *1216 restraining order. The defendant cites C.C.P. Art. 3608 as authority for the damage award here sought. This article provides "the court MAY allow damages for wrongful issuance of a temporary restraining order or preliminary injunction". By use of the word MAY this article provides that judicial discretion may be exercised in awarding damages for the wrongful issuance of an injunction. Amacker v. Amacker, 146 So.2d 672 (La.App. 1st Cir. 1962) and Telerent Leasing Corp. v. R & P Motel, Inc., 343 So.2d 267 (La.App.1st Cir. 1977).
The defendant admitted giving the plaintiff the right to use the driveway constructed on the 50 foot strip for two years commencing August 14, 1975. During the first week of July 1977, approximately 5 weeks before the plaintiff's right to use defendant's driveway would have expired, defendant installed two fence posts along the west line of the right of way in such a manner as to obstruct plaintiff's use of the driveway. Under these circumstances, the plaintiff was entitled to seek the temporary restraining order. Though the temporary restraining order was thereafter extended beyond August 14, 1977 and a permanent injunction incorporated in the judgment herein appealed from, the initial action of the defendant in depriving the plaintiff of a right which he admittedly gave him creates such justification for plaintiff's initial action that we in the exercise of our discretion deny the plaintiff's claim for damages.
For the reasons assigned, we amend the trial court judgment and hold the plaintiff has no right of passage upon the defendant's property and is entitled to no injunction prohibiting the defendant from obstructing the plaintiff from using the defendant's property. As amended, we affirm the trial court judgment. We assess all costs on appeal against the plaintiff leaving the assessment of costs below as contained in the trial court judgment unchanged.
NOTES
[1] C.C. Art. 699: "The owner whose estate is enclosed, and who has no way to a public road, railroad, or a tramroad may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, or a tramroad and shall have the right to construct a road, railroad or tramroad according to circumstances and as the exigencies of the case may require, over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road or railroad, tramroad, or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion." (Amended by Acts 1970, No. 672, § 1)

The substantive provisions of this article are now provided for in Article 689:
"The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion." (Acts 1977, No. 514, § 1, eff. Jan. 1, 1978)
[2] C.C. Art. 701. "It is not always the owner of the land which affords the shortest passage who is obliged to suffer the right of passage; for if the estate, for which the right of passage is claimed, has become inclosed by means of sale, exchange or partition, the vendor, coparcener or other owner of the land reserved, and upon which the right of passage was before exercised, is bound to furnish the purchaser or owner of the land inclosed with a passage gratuitously, and even when it has not been sold or transferred with the rights of servitude."

New Article 694 substantially reproduces Article 701:
Art. 694. "When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude of passage." (Acts 1977, No. 514, eff. Jan. 1, 1978)
[3] The substantive provisions of Article 789 are now provided for by C.C. Art. 753.
[4] C.C. Art. 795. "Prescription for non-usage does not take place against natural or necessary servitudes, which originate from the situation of places."

This article is substantially reproduced by new Article 758.
Art. 758: "The prescription of nonuse does not run against natural servitudes." (Acts 1977, No. 514, § 1, eff. Jan. 1, 1978)
[5] Art. 2275. "Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."
[6] Art. 743: "Servitudes are established by all acts by which property can be transferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery."

The substantive provisions are now provided for in C.C. Article 722:
"Predial servitudes are established by all acts by which immovables may be transferred. Delivery of the act of transfer or use of the right by the owner of the dominant estate constitutes tradition." (Acts 1977, No. 514, § 1, eff. Jan. 1, 1978)
[7] Art. 731: "It is not sufficient to be an owner in order to establish a servitude; one must be master of his rights and have the power to alienate; for the creation of a servitude is an alienation of a part of the property.

Thus minors, married women, persons interdicted, can not establish servitudes on their estates, except according to the forms prescribed for the alienation of their property."
The substantive provisions are now provided for in C.C. Article 708:
"The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply." (Acts 1977, No. 514, § 1, eff. Jan. 1, 1978)
[8] This type of servitude was recognized in the decision of Mallet v. Thibault, 212 La. 79, 31 So.2d 601 (1947), by the application of C.C. Arts. 757 and 758 and is now specifically provided for in new C.C. Arts. 639 and 640 which were included in Act No. 103 of 1976.
[9] Art. 2440: "All sales of immovable property shall be made by authentic act or under private signature.

Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted."