407 So.2d 1334 (1981)
Deborah DUHON, Plaintiff-Appellant,
v.
Arlie D. DUGAS, Defendant-Appellee.
No. 8568.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
*1335 Miguez & Leckband, Carl A. Leckband, Jr., Lake Charles, for plaintiff-appellant.
Scofield & Associates, Benjamin W. Mount, Lake Charles, for defendant-appellee.
Before FORET, SWIFT and LABORDE, JJ.
FORET, Judge.
Deborah Duhon (Plaintiff) brought this tort action seeking to recover damages for personal injuries and the destruction of a house purchased by her from defendant, Arlie D. Dugas. Plaintiff alleges that these damages resulted from defendant's negligence. Defendant reconvened and sought to recover damages for personal injuries, property damages and expenses incurred as a result of plaintiff's failure to move the house off of defendant's land at the time agreed upon.
The trial court rendered judgment dismissing plaintiff's main demand and defendant's reconventional demand[1]. Plaintiff-appellant raises the following issues on appeal:
(1) Whether the trial court committed manifest error in finding no conduct on the part of the defendant which was a cause-in-fact of the harm suffered by the plaintiff;
(2) Whether the trial court erred in finding that the risk of destruction of the object of the sale (the house) was on the plaintiff.

FACTS
This suit arises out of the verbal sale of a house belonging to defendant and purchased by plaintiff on May 17, 1978, for the sum of $2,500.00. The house was located in Iowa, Louisiana, and was to be moved by plaintiff as soon as possible, to enable defendant to begin construction of a new home on the land.
At the time of the sale, there was at least one tree limb overhanging the house which had to be cut to allow the movers to jack up the house. In addition, the top story and one of the rooms had to be removed because of height and width restrictions. Several days after these alterations were made, the movers arrived at the location to begin the move. The testimony is contradictory as to what happened next, except for the fact that the house wasn't moved.
The movers were unable to return to complete the job until August 17, 1978, some two months later than planned. During this period of time, the house was covered with plastic sheeting as the roof had been removed. However, this proved to be inadequate protection and heavy rains caused extensive damage to the interior of the house. Plaintiff attempted to repair the house after it was moved, but the damage was too great and it was finally torn down.
Plaintiff instituted this action on June 15, 1979, alleging: that defendant refused to allow the removal of a tree or the cutting of any branches of the tree, which were blocking the path to be used in moving the house; that this resulted in the movers' leaving and the house remaining on defendant's land for some two months with its top *1336 story and roof removed; and, that during this period of time the plastic sheeting covering the house failed, resulting in extensive and irreparable damage to the house. Plaintiff contended that defendant's refusal to allow the removal of the tree or the cutting of its branches constitutes actionable negligence and that defendant is liable to her for the damages caused by said refusal. Plaintiff also alleged that she suffered personal injuries (mental anguish and harassment) which were caused by defendant's negligence.
Defendant answered plaintiff's petition generally denying the allegations of fact contained therein and then assumed the position of plaintiff-in-reconvention. She alleged in her reconventional demand: that a verbal sale of the house had been made to plaintiff on May 17, 1978; that plaintiff had agreed to move the house on June 26, 1978; that on June 26, 1978, plaintiff could have moved the house off of her property by heading north, but instead wanted to go south, which would have necessitated the cutting and removal of trees; that plaintiff's mover agreed that the house could be moved through the north side of the property; that plaintiff and mover left without moving the house and failed to return until August 15, 1978, and moved the house off on August 17, 1978.

DEFENDANT'S ALLEGED NEGLIGENCE
Plaintiff contends that the trial court committed manifest error in failing to find that actionable conduct on the part of defendant was a cause-in-fact of the harm suffered by plaintiff. Essentially, plaintiff argues that defendant refused to allow the cutting of any tree limbs that presented obstacles to the moving of the house and that this refusal ultimately resulted in the destruction of the house.
The testimony of the parties and their witnesses as to defendant's alleged refusal is completely contradictory. Plaintiff testified that the parties had agreed that the house be moved off of defendant's land towards the north and that certain limbs on a tree could be cut to facilitate the move. An employee of the moving company testified that there never was any question as to the fact that the best way to move the house was towards the north. He also testified that defendant came by the house on the day it was to be moved and told them that he could not cut a limb overhanging the house.
Defendant, on the other hand, testified that she had met with plaintiff prior to the date on which the house was to be moved. She stated that she told plaintiff that it would be best to move the house towards the north, but was informed that the mover wanted to move it towards the south. A move towards the south would have necessitated the complete removal of an oak tree and a number of limbs from other trees and defendant was opposed to this. The first contact defendant had with the movers was on or around July 1, 1978. Defendant drove out to the house that morning and noticed that the movers were preparing to move the house. She testified that the foreman indicated that they were planning to move the house towards the south. She objected to this and the foreman told her he would make a phone call. When he returned, he indicated to her that it would be all right to move the house towards the north. She testified that she had given the movers permission to remove those limbs blocking the way towards the north and then left, believing that the house would be moved in that direction. She passed by the house early that afternoon and testified that the movers appeared to be proceeding with the job. However, when she went to the house around dusk, the movers had left and taken their equipment with them. She had no further contact with them. She finally set a deadline for plaintiff to have the house moved. On August 17, 1978, the house was moved by going north.
Defendant's son, John P. Dugas, testified that he did meet with the movers when he *1337 found out that the house had not been moved at the time agreed upon. He stated that he got into a heated discussion with the foreman because the foreman kept indicating that he wanted to move the house toward the south because it would be easier. The object was to get the house to U.S. Highway 90 and one could go straight to that highway by going south. However, Dugas emphatically stated that he did not want the oak tree blocking the path destroyed. He had no further contact with the movers.
Our review of the record establishes that the trial court's finding that no conduct of the defendant was a cause-in-fact of plaintiff's harm is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).

EXISTENCE OF A CONTRACT OF SALE
Plaintiff contends that a contract of sale was entered into by the parties for the sale of the house. She argues that, under the provisions of certain articles found in Title VII ("Of Sale") of Book III of the Louisiana Civil Code, it is defendant who is responsible for the destruction of the house, or, who bore the risk of its destruction. However, there exists a potential problem in making such a determination based on those codal articles. The problem arises from the fact that the object of the sale (the house) is an immovable. See LSA-C.C. Article 464 and comments thereto.
LSA-C.C. Article 2440 provides:
"Art. 2440. Sale of immovable, methods of making
Art. 2440. All sales of immovable property shall be made by authentic act or under private signature.

Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted." (Emphasis ours).
There was no authentic act or act under private signature entered in evidence to prove the existence of a contract of sale between the parties.
LSA-C.C. Article 2275 provides:
"Art. 2275. Verbal sale of immovables
Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."
In conformity with the above mentioned codal authority, it is now the well-settled law of this State that sales of immovable property must be in writing and no verbal sale or disposition of immovable property shall be valid against an alleged vendor unless the vendor admits the sale or disposition when interrogated under oath, provided also actual delivery of the immovable sold has been made. Perry v. Perry, 122 So.2d 829 (La.App. 1 Cir. 1960), and authorities cited therein. See also Williams v. Alexander, 193 So.2d 94 (La.App. 1 Cir. 1966), and Langevin v. Howard, 363 So.2d 1209 (La.App. 2 Cir. 1978), writ denied, 366 So.2d 560 (La.1979).
The record shows that defendant (vendor) admitted at trial, under oath, that she had made a verbal sale of the house to plaintiff. Thus, if there was actual delivery made of the house to plaintiff prior to trial, the verbal sale is valid. LSA-C.C. Article 2275, supra, provides no definition of the term "actual delivery" as used therein.
LSA-C.C. Article 2477 provides:
"Art. 2477. Tradition or delivery, definition
Art. 2477. The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer."
We are of the opinion that the term "actual delivery" as used in LSA-C.C. *1338 Article 2275 means that the immovable, which is the object of the verbal sale, has in fact been transferred or placed into the power and possession of the buyer[2]. A determination of whether "actual delivery" of an immovable has been made as required by LSA-C.C. Article 2275 depends on the facts and circumstances of each individual case.
Here, defendant testified that she agreed to sell the house to plaintiff on May 17, 1978, and that plaintiff gave her a check that day for the full amount of the purchase price. She told plaintiff at that time that she wanted the house moved as soon as possible and plaintiff agreed to do so. Plaintiff's testimony as to the details of this sale is essentially the same as defendant's, except that she places the date of the sale on or around June 15, 1978. We accept the date given by defendant as the date on which the verbal sale was made.
We find that "actual delivery" of the house was made to plaintiff on May 17, 1978. It was on that day that the house was in fact transferred or placed into the power and possession of the plaintiff (buyer). She was free to do whatever she wanted with it and could have moved it that day had she chosen to do so.
We find that the verbal sale of the house by defendant to plaintiff was valid since all of the requirements of LSA-C.C. Article 2275 were met.

RISK OF DESTRUCTION
Having found that a valid sale of the house was made, we must now determine who bore the risk of its destruction at the time it was destroyed.
LSA-C.C. Article 2467 provides, in pertinent part:
"Art. 2467. Risk after sale
Art. 2467. As soon as the contract of sale is completed, the thing sold is at the risk of the buyer, ..."
LSA-C.C. Article 2456 provides:
"Art. 2456. Completion of contract by agreement as to object and price
Art. 2456. The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
As noted above, both parties testified that they reached an agreement for the object (the house) and for the price thereof ($2,500.00). We have found that this agreement was reached on May 17, 1978 and, thus, plaintiff bore the risk of the destruction of the house thereafter. We note that the damage to the house occurred sometime after July 1, 1978, which was subsequent to the date on which plaintiff testified that an agreement had been reached by the parties.
Plaintiff contends that defendant breached her duty under LSA-C.C. Article 2468[3] to guard the house as a faithful administrator pending its delivery to plaintiff. There is no evidence in the record to support this contention.
For the above and foregoing reasons, the judgment of the trial court dismissing *1339 plaintiff's main demand is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] Ms. Dugas did not appeal the dismissal of her reconventional demand, nor did she answer plaintiff's appeal; therefore, the judgment of the trial court is final as regards her reconventional demand.
[2] This method of making delivery of immovables is to be distinguished from that found in LSA-C.C. Article 2479 which provides:

"Art. 2479. Immovables, method of making delivery
Art. 2479. The law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. Every obstacle which the seller afterwards interposes to prevent the taking of corporal possession by the buyer, is considered as a trespass."
[3] LSA-C.C. Article 2468 provides:

"Art. 2468. Seller's duty of care pending delivery
Art. 2468. Until the thing sold is delivered to the buyer, the seller is obliged to guard it as a faithful administrator; and if, through want of this care, the thing is destroyed, or its value diminished, the seller is responsible for the loss."