485 So.2d 187 (1986)
Daniel W. GUILLOTTE and Lola Mae Guillotte, Plaintiffs-Appellees,
v.
H.W. WELLS and Annie Bell Wells, Defendants-Appellants.
No. 17602-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1986.
*188 David A. Rothell, Mansfeld, for defendants-appellants.
Herman L. Lawson, Mansfeld, for plaintiffs-appellees.
Before HALL, MARVIN and NORRIS, JJ.
MARVIN, Judge.
The defendant landowners (Wells et ux) appeal a judgment declaring that a "pipeline servitude" for a domestic user gas line was established across their property by acquisitive prescription in favor of the neighboring landowner (plaintiffs Guillotte et ux). The judgment also enjoins defendants from interfering with plaintiffs' use of the gas pipeline.
The trial court's judgment is clearly contrary to Nash v. Whitten, 326 So.2d 856 (La.1976), which proscribed creation of such a servitude by acquisitive prescription. The revision of the Civil Code effective January 1, 1978, which now allows the establishment of such a servitude by prescription, is not retroactive. See Comments to CC Art. 740; Norton v. Thorne, 446 So.2d 972 (La.App. 3d Cir.1984).
On this record, however, we find that defendants' judicial admission and stipulation that he expressly granted permission to plaintiff to lay the gas line in the 1950's is a confession under oath which is sufficient to establish, under the peculiar circumstances of this case, by title, a right of use, or personal servitude, in favor of plaintiff. CC Arts. 645, 708, 722, 1839.
We therefore amend the judgment in this respect and, as amended, affirm.

FACTS
The litigants own contiguous acreage located within the same unit served by a producing natural gas well located on the defendants' property. The mineral leases affecting the lands of each litigant permitted each lessor to connect a gas line to the *189 unit well for residential use or consumption of gas. The lessee first allowed defendants, and then plaintiffs, the use of residential gas.
Defendants lived south of plaintiffs and constructed their residential gas line to the well before plaintiffs. Sometime between 1950 and 1955, and with the permission of defendants, plaintiffs constructed a gas line from their home across part of defendants' property and connected it to defendants' line. Defendants, by answer and by the stipulated facts, admit to giving plaintiffs "permission." The well operator, Arco, also has recognized that plaintiffs and defendants are entitled to residential gas under the Arco lease.
Plaintiffs enjoyed use of the gas line without incident until October 1980 when Arco demanded that plaintiffs upgrade their gas line to Arco's safety specifications. Plaintiffs complied by constructing a new line which, according to stipulation, was "laid ... at a point and place granted to [plaintiffs] ... by [defendant] ..."
The defendants contend that their "verbal permission for construction of the new line was conditioned on the plaintiffs obtaining the consent of the defendants' son, Roger, who lived in a separate residence on the defendants' property. Plaintiffs' petition alleges that the dispute arose in 1983 when the plaintiffs discovered that defendants' son, Roger, had connected a gas line from his home to plaintiffs' line. Plaintiffs demanded that Roger remove his connection and in turn defendants demanded that the plaintiffs disconnect their line from defendants' line. Each refused to comply with the other's demands and the defendants cut and plugged or capped plaintiffs' line where it crossed defendants' property.
Although the trial court's judgment was founded on acquisitive prescription, the record supports the trial court's additional finding that
[the plaintiffs] laid ... [the new gas line] at the place designated by [defendant]. This was by verbal agreement, and the line was laid in October 1980 where it remained until June 1983 at which time the [defendants] cut the line... There is no question but that both the old gas line and the new gas line were laid on [defendants'] land by [the plaintiffs] with the oral permission of [defendant].

CHARACTER OF THE SERVITUDE
Servitudes are categorized by the nature of the advantage or utility stipulated in the juridical act creating the servitude. A predial servitude is a charge on one estate for the stipulated benefit of another estate. The benefit must be attributable to any person who may own the dominant estate at any given time. CC Art. 646. A servitude is considered personal when the charge on the thing is stipulated for the benefit of a designated person or owner of another estate. CC Art. 534. See also Yiannopoulos, 4 Louisiana Civil Law Treatise; Predial Servitudes, § 9 at p. 34 (1983).
One practical distinction between the two kinds of servitudes is that predial servitudes pass with transfers of the servient estate while personal servitudes do not inure to the benefit of transferees of the land owned by the person in whose favor the servitude was established. Like usufruct, it is a charge on property in favor of a particular person rather than in favor of an estate and, like a predial servitude, it is a charge of use and enjoyment on an immovable owned by another. Yiannopoulos, 3 Louisiana Civil Law Treatise: Personal Servitudes, § 117 (1978).
Some utility gas lines, of course, are predial. See Arkansas Louisiana Gas Co. v. Cutrer, 30 So.2d 864 (La.App.2d Cir. 1947). Compare Nash, supra. The circumstances under which a particular servitude is created determines its character. The record indicates that defendants intended to allow plaintiffs to exercise the privilege of using residential gas from the unit well, a privilege defendants had exercised. Defendants stipulated only that "the gas line was laid by plaintiffs [in the 1950's] with defendants' permission ... for plaintiffs to tie into defendants' gas line and obtain gas *190 for domestic use from a gas well located on defendants' property." Defendants' proper-person answer to the original petition states that they gave plaintiffs permission "as a neighbor." There is no evidence that the defendants intended to stipulate a benefit to plaintiffs' property that would inure to subsequent owners of the property.
The right of use is otherwise regulated by the rules governing usufruct and predial servitudes to the extent that those rules do not conflict with the nature of and rules governing rights of use. See CC Art. 635 and its comments. Our further discussion of the articles concerning the predial servitude is subject to the caveat that plaintiffs' "right of use" or personal servitude is not predial and does not "run with the land."

VERBAL SERVITUDE
Servitudes may be established by title under any juridical act sufficient to transfer immovables. CC Arts. 708, 722. "The establishment of predial servitudes by juridical act is subject to the formal and substantive requirements governing the transfer of immovable property." Comment (b) to CC Art. 722. "Delivery of the act of transfer or use of the right by the owner of the dominant estate constitutes tradition. CC Art. 722. Our emphasis. See also McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960), interpreting former CC Art. 766; Langevin v. Howard, 363 So.2d 1209 (La.App.2d Cir.1978); and Greene v. Greene, 373 So.2d 756 (La.App.3d Cir.1979).
CC Art. 1839, restated former CC Art. 2275 to provide:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property had been actually delivered and the transferor, recognizes the transfer when interrogated under oath. (Emphasis ours.)
The defendants did not address this principle on appeal. The plaintiffs contend, however, that the principle applies to predial servitudes so that defendants' judicial admission that they granted verbal permission to plaintiffs to construct and use the gas line amounts to an oral confession under oath of CC Art. 1839 and its predecessor. We agree. The article's requirement of "delivery" is satisfied by the plaintiffs' construction and use of the gas line. CC Art. 722.
The rule advanced by the plaintiffs is a narrow exception to the writing requirements for onerous and gratuitous transfers of immovable property found in CC Arts. 1536, 1832, and 2440. Professor Yiannopoulos suggests that former CC Art. 2275 implies that a verbal agreement could establish a predial servitude by title but cites one case requiring a written instrument. See Stinson v. Lapara, 62 So.2d 291 (La. App.Orl.1953). Indeed, Louisiana courts have long held that oral agreements satisfy the "just title" requirement for establishing predial servitudes by the 10-year good faith acquisitive prescription. Yiannopoulos, Predial Servitudes; Creation by Title: Louisiana and Comparative Law, 45 Tul. L.Rev. 459, fn. 157 at p. 482 (1971), citing Kennedy v. Succession of McCollam, 34 La.Ann. 568 (1882); Greco v. Frigerio, 3 La.App. 649 (La.App.Orl.1926); cf. Blanda v. Rivers, 210 So.2d 161 (La.App. 4th Cir. 1968).
Moreover, both the scholarly writers and the jurisprudence have recently recognized that a predial servitude may be verbally created under the limited circumstances embodied in former CC Art. 2275. Yiannopoulos, 4 Louisiana Civil Law Treatise, Predial Servitudes, § 124, p. 355 (1983). See Langevin, supra, where the owner of the servient estate admitted at trial that he accepted a $200 check from the owner of the dominant estate in return for use of a driveway for two years. This court declined to recognize the servitude only because the suit was filed more than two years after the check was given and the servitude and thus expired by the terms of the agreement that created it. See also O'Neill v. Miramon, 477 F.Supp. 82 (E.D. La.1979), where the court refused to recognize the servitude only because the owner of the servient estate did not allow the *191 owner of the dominant estate to commence use and thus the servitude was not "delivered". We are not, at this time, called on to determine when the right of using the gas terminates.
Though it is not clear whether defendants' son, Roger, was a party to the contract or whether he had an ownership interest in his parents' land, this record manifests Roger's consent to plaintiffs' reconstruction of the gas line in 1980 because Roger connected to the line in 1983 to provoke the dispute. CC Art. 1927, former CC Arts. 1979, 1816. Similarly, we are not called on to determine Roger's rights as a domestic user under the Arco lease.

ADDITIONAL REASONS
The record indicates that plaintiffs and defendants assume that each litigant may be entitled to domestic gas from the unit well under the Arco lease, which neither litigant offered in evidence. We note that cases in other states have held that each lessor in a production unit is entitled to domestic use gas from the unit well where the leases so provide. These cases reason that because the gas being produced is drawn from beneath all lands included in the unit, each lessor should have the right to obtain his or her share of the production as residential gas. See Jackson v. Farmer, 225 Kan. 732, 594 P.2d 177 (1979), and Post v. Tenneco Oil Co., 278 Ark. 527, 648 S.W.2d 42 (1983).
The above cases recognize that while only one lessor bears the liability of the well on his property, the other lessors bear the liability that the lessee may conduct operations or lay gathering lines and equipment on the other leases within the unit.

DECREE
Accordingly, we shall recast to amend the judgment and to include the description of the tract of land across which the personal servitude, or right of use, in favor of plaintiffs is declared. The trial court judgment did not describe the defendants' lands. CCP Art. 1919.
IT IS HEREBY ORDERED that plaintiffs, Daniel W. Guillotte and Lola Mae Guillotte are declared to enjoy the right of use, or a personal servitude for the use and maintenance of a residential use gas pipeline laid across the property of defendants, H.W. Wells and Annie Bell Wells, described as
The N/2 of SW of SW, less a 77-yard wide strip off the east side thereof, and the N/2 of SW/4, Section 31, T12N, R15W, containing 96 acres more or less in DeSoto Parish, Louisiana.
which pipeline runs from the residence of plaintiffs in Section 31, T12N, R15W, to a pipeline connected to the unit well located on defendants' above described property.
Defendants, their agents and assigns, are hereby enjoined from interfering with plaintiffs' use and maintenance of the residential gas pipeline.
All costs are assessed against defendants-appellants.
AMENDED AND AFFIRMED.