BARRY, Judge.
Marina Enterprises, owner of Gulf Outlet Marina in Chalmette, petitioned for a declaratory judgment to prohibit Ahoy Marine Services, Inc. and Christian Seafood Company from continuing to use its water line. Ahoy Marine and Lynn Delaughter d/b/a Christian Seafood, answered that they had been granted a servitude and/or right of use to the water line. The judgment denying the declaratory judgment granted the right of use and servitude and ordered that all parties share maintenance costs of the water line. Marina Enterprises appeals.
FACTS AND TESTIMONY
Raymond Frischhertz, principal of Ahoy Marine Services, Inc., bought his property from Blue Streak Enterprises, Inc., on March 11, 1975. The Agreement to Purchase dated October 16, 1974 was entered into the record by stipulation and contains an Addenda which noted at No. 2: “Electrical Power, Gas and Potable Water is rea *1082 sonably accessible.” The Act of Sale dated March 11, 1975, (stipulated) made no mention of the water line although it declared a servitude of passage or right-of-way along the existing private community road as per a survey. A letter by Frischhertz to Blue Streak (stipulated) dated May 20, 1975 declared: “I assume I still have your permission to tie into the fresh water supply existing along the property line. I would install a new meter in the tap line.” The response dated May 28, 1975 stated: “You have my permission to tie into the fresh water supply existing along the property line with a meter in the new line.”
Blue Streak later sold the property to Marina Enterprises upon which Gulf Outlet Marina is located. Ahoy Marine had already tapped into the water line pursuant to the agreement with Blue Streak Enterprises. Robert Berthelot, manager of Marina Enterprises, testified that he knew of the arrangement at the time of the purchase and continued to allow Ahoy Marine to obtain water.
In 1979 Marina Enterprises leased part of the land and a building to Christian Seafood Company (doing business under a different name). Lynn Delaughter, managing partner of Christian Seafood, testified that his water supply was furnished by Gulf Outlet Marina’s water line and the bill was prorated. On July 1, 1982 J.W. Christian and Lynn Delaughter, a commercial partnership doing business as Christian Seafood Company, purchased the leased property. The Act of Sale did not mention use of the water line, but Christian Seafood continued to obtain its water from Marina Enterprise’s line.
Marina Enterprises’ manager testified his company bought and installed water meters on the properties of Ahoy Marine and Christian Seafood for which he was reimbursed. He received one water bill and prorated it according to usage for years.
Initially the manager testified he wanted to stop the arrangement because the two businesses refused to pay for maintenance of the line, even though both always paid their share of water bills. He conceded that he never submitted a bill for the maintenance, but contended the road maintenance bill (not itemized) included the water charge. Ultimately, he admitted his motivation to terminate the arrangement stemmed from their failure to pay for road maintenance, a matter involved in another lawsuit. The manager speculated Marina Enterprises would not be reimbursed for the water line since it could not collect for road maintenance. He admitted that his frustration over the road maintenance expenses precipitated this lawsuit.
ARGUMENTS
It appears that Christian Seafood’s use of the water line constitutes a predial servitude established by destination of the owner. Marina Enterprises dismissed its appeal against Christian Seafood.
In a post-trial memo Ahoy Marine argued it acquired ’ a predial servitude from its common ancestor in title, Blue Streak Enterprises. The memo contended the agreement to sell with its addenda, the two letters between Blue Streak Enterprises and Ahoy Marine, and the testimony of its real estate agent, Walter Bast, relating to his client’s concern for “portable water” proved the creation of a predial servitude by title. Ahoy Marine filed no appellate brief.
In its brief Marina Enterprises contends tapping into the water line was a matter of sufferance and good will. Marina Enterprises submits the servitude has not been proven by juridical act, operation of law, acquisitive prescription, or destination of the owner.
GENERAL LAW
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La.C.C. art. 646 [C.C. arts. 646-649 (1870) ].[1] There must be two dif *1083 ferent estates, servient and dominant (with a benefit to the dominant estate), belonging to different owners. Yiannopoulos, 4 Louisiana Civil Law Treatise § 9 (1983) [Civil Law Treatise ].
A predial servitude is a real right inseparable from the dominant estate to which it is attached. La.C.C. art. 650 [C.C. arts. 653-54 (1870)]; Ogden v. Bankston, 398 So.2d 1037 (La.1981). Drawing water is listed as an example of a predial servitude in La.C.C. art. 699 [Arts. 711, 721-726 (1870)]. Predial servitudes may be natural, legal and voluntary or conventional. Voluntary or conventional servitudes are established by juridical act, prescription or destination of the owner. La.C.C. art. 654 [art. 659 (1870)].
They are classified as apparent or nonap-parent. Apparent servitudes may be acquired by title, by destination of the owner or by acquisitive prescription. La.C.C. art. 740 (1977). Apparent servitudes are perceivable by exterior signs, work or constructions. La.C.C. Art. 707 [art. 728 (1870)]. The laws governing acquisitive prescription of immovable property apply to an apparent servitude. It can be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title. La.C.C. art. 742 (1977); Kizer v. Lilly, 471 So.2d 716 (La.1985).
Personal servitudes confer upon a person a specified use of an estate less than full enjoyment. La.C.C. arts. 534, 639 (1976). They are governed by the laws of predial servitudes to the extent that they do not conflict. La.C.C. art. 645 (1976). Insofar as predial and personal servitudes affect immovable property, they are treated alike except that a predial servitude runs with the land and a personal servitude is strictly for the benefit of the person. Parkway Development Corporation v. City of Shreveport, 342 So.2d 151 (La.1977); Hailey v. Panno, 472 So.2d 97 (La.App. 5th Cir.1985).
SERVITUDE OF AHOY MARINE SERVICES
Ahoy Marine claims the predial servitude was established by title. Although title has many definitions, it is used in the statutes synonymously with a juridical act. The establishment of a predial servitude by title is an alienation of a part of the property. Laws governing alienation of immov-ables apply. La.C.C. art. 708 (1977); Heirs of Primeaux v. Erath Sugar Company, Ltd., 484 So.2d 717 (La.App. 3d Cir.1986).
The acts establishing the servitude must be sufficient to transfer a real right and must be properly filed. Comment to C.C. art. 722 (1977); Civil Law Treatise at § 126. Immovable property may be transferred by authentic act or by act under private signature. La.C.C. art. 1839 (1984). The agreement usually must be in writing. La.C.C. art. 2440; Langevin v. Howard, 363 So.2d 1209 (La.App. 2d Cir.1978), writ denied 366 So.2d 560 (1979). The only exception is found in La.C.C. art. 1839, which provides that an oral transfer is valid between the parties when the property has been delivered and the transferor recognizes the transfer when interrogated under oath.
Ahoy Marine argues that the Addenda to the Agreement to Purchase and the letter giving permission to tie into the fresh water supply satisfy the writing requirement. Title does not necessarily require a writing. It does not merely mean a written instrument, but a contract or a testament intended to create a servitude. It means a declaration of intent, rather than a written instrument. Civil Law Treatise at § 112 (1983). It “refers to the method by which the servitude may be created and does not relate exclusively to the conveyance of the servient estate.” McGuffy v. Weil, 240 La. 758, 125 So.2d 154, 157 (1960) (interpreting La.C.C. art. 766 (1870)).
*1084 However, to be effective against third parties (or a subsequent purchaser of property such as Marina Enterprises), it must be recorded. La.C.C. art. 1839 (1984); Overmeier v. Traylor, 484 So.2d 676 (La.App. 1st Cir.1986). Failure to record does not negate the servitude but it can be asserted only between the parties.[2] Yianno-poulos, Predial Servitudes; Creation by Title: Louisiana and Comparative Law, 46 TUL.L.REV. 487 (1971).
Even if we find an agreement creating a predial servitude in favor of the dominant estate of Ahoy Marine (or a personal servitude in favor of Frischhertz) to draw water from the servient estate of Blue Streak Enterprises, it would be enforceable only between those parties. Under the public records doctrine an acquirer (Marina Enterprises) is only bound by recorded instruments. Personal knowledge outside the record is immaterial. A bona fide purchaser for value is entitled to rely on the absence of instruments that must be recorded. Civil Law Treatise at § 125; Camellia Place Subdivision-Block 1 Association v. Willet 491 So.2d 764 (La.App. 3rd Cir.1986).
Since the alleged servitude was never recorded it has no effect on Marina Enterprises, the subsequent owner and a third party who must rely upon the public record. The personal knowledge of the manager of Marina Enterprises as to the existence of the servitude is immaterial. See Anderson v. Courtney, 190 So.2d 493 (La.App. 1st Cir.1966).
The trial court gave no reasons why Ahoy Marine had a right of use and servitude of the water line. Our discussion shows the servitude, even if created by title (not in an act of conveyance or a document recorded in the public record), could have no effect against Marina Enterprises, a subsequent owner.
Destination of the owner was inapplicable since tapping into the water line did not occur until after the estates were owned by two different persons. See C.C. art. 741 (1977). The possession of Ahoy Marine was not adverse, but with the permission of Blue Streak Enterprises and Marina Enterprises (until recently). Acquisitive prescription, not at issue below, is not available. Yiannopoulos, Creation of Servitudes by Prescription and Destination of the Owner, 43 LA.L.REV. 58-59.(1982).
We must reverse the judgment insofar as it grants a servitude and right of use to Ahoy Marine Services who is to pay all costs of these proceedings.
REVERSED.

. In Acts 1977, No. 514 § 1, Title IV of Book II of the Civil Code consisting of articles 646 to 822 was amended and reenacted effective January 1, 1978. This opinion will cite the new *1083 property article first in order. If the new article does not substantially change the law, reference will be made to the pre-1978 provision(s). Otherwise the individual statute will be cited.

. A verbal sale of an immovable (or the granting of a servitude) shall be good against the vendor and the vendee who confesses it under oath provided actual delivery has been made. La.C.C. art. 1839. Since a servitude is delivered when the dominant estate owner has use of it, La.C.C. art. 743 (1870), the servitude as between Blue Streak Enterprises and Ahoy Marine arguably could have been proven even without the writing. Guillotte v. Wells, 485 So.2d 187 (La.App. 2d Cir.1986). See also O’Neill v. Miramon, 477 F.Supp. 82 (U.S.E.D.La.1979).